## SOWERS ET AL. *v.* CINCINNATI, RICHMOND & MUNCIE RAILROAD ET AL

[No. 20,176. Filed May 24, 1904.]

MUNICIPAL CORPORATIONS.—*Extension of Streets.* — *Dismissal of Proceeding on Appeal.*—*Railroads.*—*Injunction.*—A city may dismiss a proceeding for the extension of streets pending an appeal therefrom by property owners, though the city had taken possession of the land from which the streets were to be formed, and had made some improvements thereon, where no benefits or damages had been paid, and a suit can not be maintained by an adjoining property owner to enjoin a railroad company from maintaining a railroad on the land to be occupied by one of such streets when extended.

From Miami Circuit Court; *N. N. Antrim,* Special Judge.

Injunction proceeding by Winfield S. Sowers and another against the Cincinnati, Richmond & Muncie Railroad and another. From a judgment for defendants, plaintiffs appeal. *Affirmed.*

*J. T. Cox, E. T. Reasoner, J. W. O'Hara, F. D. Butler* and *Albert Ward,* for appellants.

*Robbins & Starr, R. J. Loveland* and *H. P. Loveland,* for appellees.

GILLETT, J.—Appellants brought this action to obtain an injunction against appellees. The case presents the question as to the right of the Cincinnati, Richmond & Muncie Railroad to maintain an open ditch and to leave freight-cars standing upon a certain strip of land, described in the complaint as Wabash street, in the city of Peru. Pursuant to request, the court below found the facts specially, and stated its conclusions of law thereon. There was a judgment that appellants take nothing, and for costs. The case can be disposed of on the facts found in the special finding. So far as it is essential to exhibit such facts here, they are, in substance, as follows: The south-

ern boundary of the original city of Peru extends to the north bank of the Wabash & Erie Canal. In the year 1873 said city instituted a proceeding, by a petition filed before the board of commissioners of Miami county, to annex the unplatted lands lying between said southern boundary and the Wabash river. Although the question is in controversy, we may assume, for the purposes of this opinion, that said proceeding resulted in an annexation of said territory. In 1891 a resolution was introduced in the common council of said city to extend Wabash street, in said city, and thirteen other streets therein, in a southerly direction, across said annexed territory. The matter was referred to a special committee, and, upon its recommendation, was referred to the city commissioners. The latter body, after taking the proper statutory steps, reported in favor of the appropriation. In that report the strip in controversy is properly described, and is designated as a continuation of Wabash street. Twenty-seven days later said common council, by a two-thirds vote, adopted a resolution accepting and adopting said report, declaring the property within the lines of such proposed street extension appropriated, directing that the assessments of benefits and of damages be certified to the treasurer of said city for collection, but providing that the latter should not pay or tender any part of the damages occasioned by said proceeding until the benefits assessed should have been paid to said treasurer. Within thirty days after the adoption of said resolution, two of the persons who were named in the report of said city commissioners as owners of the Wabash & Erie Canal —Elbert W. Shirk, as trustee, and Aaron N. Dukes—each prosecuted an appeal from the confirmation of said report to the Miami Circuit Court, said appeals being docketed as one proceeding. While said matter was pending in said court, Dukes filed objections to the proceedings of said city commissioners and of said city council. December 21, 1895, said cause was sent on change of venue to the Fulton

Circuit Court. On May 10, 1897, Dukes filed additional objections, that the transcript did not show that the preliminary resolution was referred to the city commissioners by a vote of at least two-thirds of the members of said common council, and that it did not appear that the final resolution was adopted by the requisite vote. The court sustained said objections, and granted said city leave to amend, but it neglected so to do. While the point is controverted, it may be assumed for present purposes that appellants are the owners of a lot lying immediately east of the strip of land in controversy, and between the Wabash river and the Wabash & Erie Canal. Their claim of title to said lot is by virtue of a deed executed in 1899, and in said deed the west line of said lot is described as the east line of Wabash street extended. August 2, 1901, said city and the Cincinnati, Richmond & Muncie Railroad entered into a contract making provision, in substance, that said railroad might construct its line on said Wabash & Erie Canal property; that certain north and south streets (not including Wabash) should be opened across said property; and that said proceeding pending in the Fulton Circuit Court should be dismissed as soon as said railroad should pay the costs in said proceeding, and should acquire title to said Wabash & Erie Canal property from said Shirk, as trustee, or should have appropriated the same as against him. September 12, 1901, said Shirk, as trustee, executed a deed to the Cincinnati, Richmond & Muncie Railroad for said Wabash & Erie Canal property before mentioned. The railroad was constructed prior to January 1, 1902. February 11, 1902, the attorney of said city appeared in the Fulton Circuit Court, and, having paid the costs in said street-opening proceeding with money advanced by the Cincinnati, Richmond & Muncie Railroad, dismissed said proceeding, and procured an entry of said dismissal to be made of record by the court.

It is further found that throughout the time that said

street-opening proceeding was pending the owners of said Wabash & Erie Canal property were resisting said proceeding, that no part of the benefits assessed was ever collected; and that no tender of damages was made to the owners of said canal property, except that on September 27, 1892, one William Arnold, the then treasurer of said city, tendered to Aaron N. Dukes, the damages assessed in favor of the owners of said property, which tender was refused. Said tender was not made on any warrant ordered by the common council or drawn by the city clerk. It is also found that said city, at a date not fixed, caused dirt to be deposited in the bed of the canal, and within the lines of the strip in controversy, so that the same became passable for public travel, and that at the time the city and the railroad company entered into said contract said strip was open for public travel, and that it was used and traveled by appellants and others as a way to and from the premises of appellants. Further facts are found, but we have already stated all that are essential to a disposition of the case, as the question is whether said strip of ground constituted a public street at the time of the institution of this action. This question was in issue upon the trial, and the burden of proof was upon appellants.

It is insisted by counsel for appellants that the action of the common council upon the report of the city commissioners gave to the strip of land in question the character of a street, and that the city was not authorized to discontinue the proceeding on appeal in advance of a trial of the cause. The procedure for the opening of streets in cities of the general class is found in §3629 *et seq.* Burns 1901. The report of the commissioners has been likened to the verdict of an *ad quod damnum* jury. *City of Elkhart* v. *Simonton,* 71 Ind. 7. We may grant that there was an appropriation of the land in controversy for the purposes of a street, and that there was no such provision for delay as would have prevented the landowners from seeking com-

pensation at once. The question we have to determine, however, is as to the right to dismiss after an appeal has been taken, and before a trial.

Section 3643 Burns 1901 provides that the transcript of the proceedings of the common council and of the city commissioners shall constitute the complaint, and that the written objections of the party appealing shall be considered as in the nature of an answer or demurrer. Although some limitations are imposed upon the extent of the hearing on appeal, yet it is evident that under proper issues a considerable range of questions relative to the regularity of such proceedings may be tried, and that the questions as to benefits and as to damages are wholly open to determination. The latter part of said section is as follows: "If, upon such appeal, the report of the commissioners as to the benefits or damages be greatly diminished or increased, the city may, upon payment of all costs, discontinue such proceedings." Appellants' counsel contend that this provision is a limitation upon the power of the city to dismiss. On the other hand, counsel for appellees assert that the provision mentioned was intended as a grant of an additional power.

We think that the city had a right to dismiss the proceeding at the time that it did. When the appeal was taken, the matters which had been settled were to a large extent again thrown into solution. The landowners had not acquiesced in the appropriation, and were entitled to avail themselves of such irregularities, if any, as might exist, to the extent that the statute permitted, to defeat the proceeding altogether, and there was no fixed limit to the amount of damages which might be awarded them. It is found that the landowners were at all times resisting the appropriation. Dukes had filed at least two objections to the regularity of the proceeding, and Shirk, as trustee, had acquired the right by his appeal to present issues of law and of fact in the cause to the full extent which the statute

authorized. Even if said persons might have claimed the damages allowed for the appropriation by the approval of the commissioners' report, there having been no stay of proceedings as provided by §3639 Burns 1901, yet they could not claim such right while they were prosecuting their appeal. The taking of that step had brought the matter *in fieri*. Literally, the proceeding was in the making, and whether it would eventuate in the establishment of the proposed street was awaiting the outcome of the litigation. As the matter then stood, even if the appropriation should be upheld in court, yet a material diminishing of the benefits or a substantial increase of the damages would give the city, by the express provision of the statute, the right to discontinue. It made no difference as to the status of the proceeding that the steps taken to accomplish the appropriation may have all been regular. That did not make the appropriation an abiding fact on appeal any more than if the proceeding had been fatally defective. The landowners were entitled to the judgment of the court required to pass on the cause as to the validity of the prior proceeding, and the judgment of that court upon such matter, had it been decided, would have been the controlling judgment until regularly set aside.

In view of the appeal, it cannot properly be said that the proposed street had been established at the time the order of dismissal was entered. As against the owner of land sought to be appropriated for a street, the general rule is that there is a right to discontinue as long as the amount of the compensation remains undetermined. Elliott, Roads & Sts. (2d ed.), §270; Tiedeman, Mun. Corp., §242; Lewis, Eminent Domain, §656; *Brokaw* v. *City of Terre Haute,* 97 Ind. 451; *City of Terre Haute* v. *Blake,* 9 Ind. App. 403; *Denver, etc., R. Co.* v. *Lamborn,* 8 Colo. 380, 8 Pac. 582.

Respecting the right of a private corporation to refuse to pay an award in a condemnation proceeding which it

had instituted, where it had selected another route, the Supreme Court of Vermont said: "When the corporation obtains a vested right to the land, or to the easement, the landowner has a vested right to the damages; that specific act which vests the right in them, gives also a vested right to the owner of the land. These respective rights are correlative, and have a reciprocal relation; the existence of one depends upon the existence of the other. If the corporation have no vested right to the land, the owner of the land has no vested right to the price which was to be paid for it." *Stacey* v. *Vermont Cent. R. Co.,* 27 Vt. 39. Concerning the authority of municipalities to abandon such proceedings, Judge Dillon says: "Under the language by which the power to open streets and to take private property for that purpose is usually conferred upon municipal corporations, they may at any time before taking possession of the property under completed proceedings, or before the final conformation, recede from or discontinue the proceedings they have instituted. This may be done, unless it is otherwise provided by legislative enactment, at any time before vested rights in others have attached. Until the ·assessment of damages have been made, the amount cannot be known; and, on the whole, it is reasonable that after having ascertained the expense of the project, the corporation should have a discretion to go on with it or not, as it sees fit, it being liable in proper cases in damages for any wrongful acts injurious to the owner." Dillon, Mun. Corp. (4th ed.), §608.

Even the taking of possession by the municipality cannot be said to amount to a definitive agreement to take the property and abide the ultimate award, since the result of a trial might bring the case within the express right to discontinue which the statute gives. *Brokaw* v. *City of Terre Haute, supra.* It is the better view—at least under an act like the one we are considering—that the taking of possession by the city while the result of the proceeding is unde-

termined is as a statutory licensee, and that the municipality is liable in damages for the injury, if any, done to the property by its acts of possession in case of a discontinuance or a defeat of the proceeding in court. *Brokaw* v. *City of Terre Haute,* 97 Ind. 451; *Hullin* v. *Second Mun. of New Orleans,* 11 Rob. (La.) 97, 43 Am. Dec. 202; *Feiten* v. *City of Milwaukee,* 47 Wis. 494, 2 N. W. 1148; *Norris* v. *Mayor, etc.,* 44 Md. 598; Dillon, Mun. Corp. (4th ed.), §609. See *Pittsburgh, etc., R. Co.* v. *Swinney,* 97 Ind. 586.

The provision granting the express right to discontinue after a trial has resulted in a finding or verdict materially changing the assessment of benefits or of damages was evidently incorporated in the statute to avoid the possible holding by the courts that the cause could not then be discontinued—a holding that would be quite reasonable in view of the provisions of our civil code regarding the dismissal of actions. See *Crume* v. *Wilson,* 104 Ind. 583. The provision of §3643 Burns 1901, relative to a dismissal, covers but a late stage in the proceeding, and it is not to be supposed that it was the legislative purpose thereby to deny the general right to discontinue before trial, which would be to compel the city to maintain a lawsuit which its representatives may have every reason to believe will result disastrously until the result has vindicated their fears.

Although we think that the city had a right to discontinue the proceedings at the time that it did, even if the owners of the property sought to be appropriated had objected, yet the question as to the authority of the municipality to dismiss is by no means as close when presented by a third person. He is not in a position where he can raise the question as to whether the discontinuance was merely irregular as against the landowner. Until there is a street *de jure,* and not merely a proceeding to establish a street, an action cannot be maintained which is predicated upon the claim that the land to which the proceeding

relates has had impressed upon it the character of a public way.

The result in the court below was right, and its judgment is affirmed.