NEW YORK LIFE INSURANCE COMPANY *v.* ADAMS.

[No. 26,041.   Filed May 13, 1931.]

*Louis H. Cook, D. H. Ortmeyer* and *Gavin & Gavin*, for appellant.

*James T. Walker, Henry B. Walker, George K. Denton* and *Winfield Denton*, for appellee.

MYERS, C. J.—Appellee, beneficiary in a life insurance policy for $1,000, issued by appellant, brought an action thereon and recovered judgment. From that judgment, appellant appealed, assigning as errors certain rulings of the trial court, which together present two questions: (1) Did the court commit reversible error by striking out appellant's cross-complaint; and (2) under all the facts and circumstances of this case, Was appellant's defense of fraud in procuring from it the insurance contract barred by the incontestable stipulation therein?

The policy made a part of the complaint was issued to Henry W. Adams October 6, 1919, and contained this stipulation: "This policy . . . shall be incontestable after two years from its date of issue, except for non-payment of premiums." The insured died October 10, 1920. Notice of his death and proofs thereof were submitted as required by the policy. Appellee commenced this action on October 31, 1921. On January 24, 1922,

appellant answered in two affirmative paragraphs and at the same time filed two paragraphs characterized as a "cross-complaint." Each of these pleadings included the application for the policy, and specifically referred to certain material statements therein, claiming that they were false and fraudulent and known to be false and fraudulent by the applicant; that appellant relied upon the truth of the statements and issued the policy; that it received the notice of the death of the insured, with proofs, in November, 1920, and immediately began an investigation of the circumstances of the insured's death; that, on February 3, 1921, it learned of the false and fraudulent statements, and thereupon not only notified appellee of the falsity thereof, but that it desired to and did rescind the policy and repaid to appellee the premiums paid, with interest. Each paragraph of answer closed with the statement that the policy had been rescinded and was no longer in force and effect. The cross-complaint prayed for a cancellation of the policy. On motion of appellee, both paragraphs of cross-complaint were stricken out on the ground that appellant had an adequate remedy at law.

This court and the Appellate Court have a number of times said that, where there is an adequate remedy at law, equity will not interfere (*Stark* v. *Lamb* [1906], 167 Ind. 642, 78 N. E. 668, 79 N. E. 895; *Hay* v. *White* [1930], 201 Ind. 425, 169 N. E. 332; *Ploughe* v. *Boyer* [1871], 38 Ind. 113; *Geiser Mfg. Co.* v. *Lee* [1903], 33 Ind. App. 38, 66 N. E. 701; *Rembarger* v. *Losch* [1918], 70 Ind. App. 98, 118 N. E. 831), but this statement must be limited when speaking of available defenses.

Our civil code provides that "the defendant may set forth in his answer as many grounds of defense, counterclaim and set-off, whether legal or equitable, as he shall have. Each shall be distinctly stated in a separate para-

graph, and numbered, and clearly refer to the cause of action intended to be answered." §370 Burns 1926, §347 R. S. 1881. "A counter-claim is any matter arising out of or connected with the cause of action which might be the subject of an action in favor of the defendant, or which would tend to reduce the plaintiff's claim or demand for damages." §373 Burns 1926, §350 R. S. 1881.

Defenses mentioned in the statute as set-off and cross-demand are not applicable to the facts in this case, and a "cross-complaint" is unknown to our code. A cross-complaint would signify a cause of action by one or more defendants against one or more codefendants, or against a person not a party to the action, involving the subject-matter therein. But, in this jurisdiction, it appears that the courts have used the words "cross-complaint" and "counter-claim" indiscriminately, but, strictly speaking, they are not synonymous. The name given to a pleading, however, does not always truly characterize it. It is the material facts incorporated therein that determine its force and effect.

Where, as in this state, law and equity are blended and enforced in the same forum upon the theory of reform procedure, equitable defenses to actions at law, under the circumstances defined by our code, may be asserted. *American Food Co.* v. *Halstead* (1905), 165 Ind. 633, 76 N. E. 251. In the instant case, appellee's cause of action was based upon the insurance contract issued by appellant. Appellant denied liability on the ground that the insured procured the contract by fraud. Obviously, as it seems to us, appellant's defense, as set forth in its so-called "cross-complaint," involved and was directly connected with the transaction upon which appellee relied for her cause of action. Moreover, the alleged fraud and the cause for challenging the validity of the contract might well have been

the subject of an action in appellant's favor for cancellation if timely and properly asserted. The authority for the pleading in question is within our code definition of a counter-claim and we will so treat it. *Rooker* v. *Fidelity Trust Co.* (1921), 191 Ind. 141, 131 N. E. 769; *Standley* v. *Northwestern Mutual Life Ins. Co.* (1883), 95 Ind. 254.

From what we have already said, this was one of a class of cases to which a timely tendered counter-claim alleging false statements would not be improper, and ordinarily it would be error to strike it out, for the reason appellant would be deprived of its right to amend in case it was insufficient to withstand a demurrer for want of facts. *Moorhouse* v. *Kunkalman* (1911), 177 Ind. 471, 96 N. E. 600; *Wilson* v. *Tevis* (1916), 184 Ind. 712, 111 N. E. 181; *Huffman* v. *Newlee* (1919), 189 Ind. 14, 124 N. E. 731; *Minor* v. *Sumner* (1923), 80 Ind. App. 269, 140 N. E. 580. But, was the error thus committed by the trial court harmful to appellant and one that would justify this court in reversing the judgment?

Here we may say, parenthetically, that had appellee dismissed her action after the filing of the counter-claim and before final judgment, such dismissal would not, for that reason alone, have taken appellant's counter-claim out of court.

Looking to the record and the issues tried, it will be observed that appellant's paragraphs of answer, upon their face, presented a good equitable defense to appellee's cause of action. The reply in five paragraphs presented a state of facts which, if true, would not only avoid the answer, but would be a defense to appellant's counter-claim. The reply was upon the theory that appellant failed to take advantage of the "incontestable clause" in the policy within the time allowed by the contract. Inasmuch as the court made a special finding

of the facts and stated its conclusions of law thereon, there seems to be no necessity for including in this opinion the contents of the several paragraphs of reply. The facts specially found follow:

The insured, at the time he applied to the appellant for a policy of insurance on his life and in favor of his wife, appellee, on September 30, 1919, resided in Chicago, Illinois, and thereafter such steps were taken that, on October 6, 1919, appellant, at its home office in the city of New York, issued the policy in suit and caused the same to be delivered to the insured at Chicago, Illinois, within five days thereafter; that the insured continued to reside in Chicago for more than a year thereafter; that said policy was issued in consideration of the payment of an annual premium of $36.29, payable September 30 each year until 20 full premiums should be paid, and upon the further consideration that the statements of the insured in the application made a part of the policy were true; that the policy should not take effect until payment of the first premium, and the insured was then in good health; that the statements in the insured's application were material to the risk and known by him to be material, and that the insurer would rely upon them; that had appellant known the facts regarding the health of the insured as it then actually existed, it would have declined the application.

The insured, Henry W. Adams, died October 10, 1920, of tuberculosis. Prior to his death, two annual premiums were paid. On November 3, 1920, proofs of death of the insured on forms furnished by appellant were by it received at the home office in New York. These proofs showed that the insured died at the Union Printer's Home in Colorado, and that he had been treated by several physicians at Colorado Springs; that he had been afflicted with tuberculosis of the lungs since November 1918, and that tuberculosis meningitis caused his death;

that, upon receiving these proofs, appellant immediately started an investigation and, on January 12, 1921, it was fully informed that the decedent had been in a diseased condition for a long time prior to the making of the application for insurance, but appellant did not elect to rescind the contract of insurance until February 3, 1921, when it notified appellee of the falsity of the representations and its desire to rescind the contract. This notice was in the form of a letter, in which was inclosed a check for the premiums paid, with interest thereon. Appellant, at the time of filing its answer, paid the amount of the check into court for the benefit of appellee. Appellee received the letter which inclosed the check, but never cashed or intended to cash it, nor did she return it, and had no communication with appellant concerning it until March 17, 1921, when attorneys employed by her notified appellant that she was not willing to accept a return of the premiums but intended to enforce collection of the amount due under the policy. The letter and the check of appellant were kept by appellee's attorney and introduced in evidence at the trial.

On January 24, 1922, appellant filed its answer and cross-complaint, but commenced no action to contest the policy for fraud or other cause within the two-year period of limitation fixed by the laws of Illinois, or the contestable period of two years stipulated in the policy; that, at the time of the execution of the insurance contract, there was in force a statute of Illinois requiring each life insurance policy issued and delivered in that state to contain a provision that the same should be incontestable after two years from its date except for non-payment of premiums and for other causes not here involved.

Upon these facts, the court stated as a conclusion of law that appellee was entitled to recover the amount

of the policy with 6% interest from November 3, 1920, and rendered judgment accordingly.

Appellant, in substance, insists that its notice to appellee of the fraud practiced by the insured, the tender and receipt by appellee of the check covering all premiums paid with interest thereon, the retaining of such check without objection, although not cashed, notice to appellee in writing of the rescission of the insurance contract, all within the contestable period allowed by the policy, amounted to a rescission without commencing an actual contest in court.

Contrary to appellant's contention, we feel safe in saying that the consensus of judicial opinion seems to be that notice by the insurer to the insured of its determination to rescind or cancel a life insurance contract for fraud in procuring it, together with a tender of all premiums paid, is not alone sufficient, as a matter of law, to constitute a rescission. The insurer must go further and, within the contestable period, institute a suit for rescission or cancellation; nor is the defense bottomed on fraud in obtaining the policy open to the defendant in case the contract has matured and no action thereon is commenced to enforce payment within such period. As said in *Powell* v. *Mutual Life Ins. Co.* (1924), 313 Ill. 161, 165, 144 N. E. 825, 36 A. L. R. 1239: "The stipulation does not waive all defenses and does not condone fraud, but recognizes fraud and all other defenses and constitutes a short statute of limitations in favor of the insured, the purpose of which is to fix a limited time in which the insurer must ascertain the truth of the representations made, and, in case of a breach of warranty, the insurer must, under this clause, assert its claim within the two-year period, either by affirmative action or by defense to a suit brought on the policy by the beneficiary within two years." See, also, *Indiana, etc., Life Ins. Co.* v. *McGinnis* (1913), 180 Ind.

9, 16, 101 N. E. 289, 45 L. R. A. (N. S.) 192, and cases there cited; and *Killian* v. *Metropolitan Life Ins. Co.* (1929), 251 N. Y. 44, 166 N. E. 798, 64 A. L. R. 956, and note thereto referring to a large number of cases on this subject.

While, as we have seen, the contract in the present case had the two-year incontestable clause; that it matured and proofs of loss were made within the contestable period, yet no action to enforce payment or to cancel or rescind it was brought until after that period. The authorities above cited require us to hold that the defense grounded on fraud, whether presented by answer or in the form of a counter-claim for cancellation or rescission of the contract, came too late. The facts found justified the conclusion of law, and, under the circumstances of this case, striking out the counter-claim was not reversible error.

There is some contention between the parties herein with reference to the court's failure to find the law of Illinois as determined by the Supreme Court of that state. In our opinion, whether the court did or did not make such finding is of no serious concern, for the reason there is no showing that the judgment in the instant case is made to depend upon the law of Illinois.

Judgment affirmed.