## STATE OF INDIANA *v.* PATTEN ET AL.

[No. 26,319. Filed February 5, 1936.]

*Philip Lutz, Jr.,* Attorney-General, and *William E. Bussell,* Deputy Attorney-General, for the State.

*Charles E. Henderson, Laurens L. Henderson, John W. Lindley* and *Allen G. Pate,* for appellees.

HUGHES, J.—The appellant filed a complaint in the Sullivan Circuit Court to condemn certain real estate belonging to appellees for the purpose of appropriating about five acres of land to widen an already established highway. The complaint was filed in the early part of the year 1930. Appraisers were appointed, and on May 16, 1930, they filed their report allowing damages in the sum of $49,000. On May 19, 1930, the State filed

exceptions to the report. On September 1, 1930, each of appellees filed a pleading denominated a counterclaim, or cross-complaint. On October 10, 1930, a change of venue was taken to the Greene Circuit Court. On January 30, 1931, the State filed a motion to dismiss its condemnation proceedings, alleging in said motion that the State Highway Commission changed its plans and specifications as to said improvement so that the land sought to be condemned would not be needed. The main reason appears to be that the State did not feel that it was justified in making the improvement on account of the great cost. On March 30, 1931, the court sustained the motion of the State to dismiss the proceedings, and the same was dismissed. The appellees filed written objections to the motion to dismiss. On September 23, 1931, the appellees filed pleadings denominated supplemental counterclaims, or cross-complaints. On March 7, 1932, the State filed motions to strike out the counterclaims, or cross-complaints, of appellees, which were overruled. Demurrers were filed by the State to the counterclaims, or cross-complaints, and overruled. A general denial was filed, a trial by jury had, and verdict returned for appellee Patten, in the sum of $600, and $15,000 for appellee, McKinney, as administrator. A motion in arrest of judgment was filed and overruled, and a motion for a new trial was filed and overruled, and this appeal followed.

Errors relied upon by appellant are as follows:

1. The court erred in overruling appellant's motion to strike from the files the counterclaims and/or cross-complaints of E. Kirk McKinney, as Special Administrator of the Estate of James C. Patten, deceased, and of William T. Patten, Trustee.

2. The court erred in overruling appellant's demurrer to the supplemental counterclaim and/or cross-complaint of the appellee, E. Kirk McKinney, as Special Administrator of the Estate of James C. Patten, deceased.

3. The court erred in overruling appellant's demurrer to the supplemental counter-claim and/or cross-complaint of the appellee, William T. Patten, Trustee.

4. The court erred in overruling appellant's motion for a directed verdict for the State of Indiana.

5. The court erred in overruling appellant's motion in arrest of judgment.

6. The court erred in overruling appellant's motion for a new trial.

7. The trial court did not have jurisdiction of the subject-matter of the action.

The counterclaims or cross-complaints of the appellees are in substance the same. It is alleged that appellees are the owners of certain real estate, and that the highway in question runs through the same; that about five years ago the State Highway Commission obtained a grant through the lands of appellees to raise the grade and improve said highway, and in pursuance thereof did raise the grade and put metal thereon; that at the time of so doing there were large ditches constructed on the north side of said State Highway on said lands which aided in taking care of any flood waters that came upon said real estate; that the highway through said lands runs through Busserun Creek bottoms; that said creek has a large watershed, and, when rains come, it rises rapidly, and spreads out over the bottoms; that the creek is the outlet and sewer for a large number of coal mines which are continuously pumped, and the water thrown into the creek; that said water contains sulphur and other poisonous matter which are destructive to growing crops, and, when the water gets over the bottom, vegetation thereon is killed.

It is further alleged that in the summer of 1930 the State Highway Commission adopted plans and specifications for the widening of said roads and filed condemnation proceedings to take land of the appellees for said purpose; that the appraisers were appointed, and

they allowed as damages $49,000; that thereafter the commission changed its plans and specifications, and left the width of the highway as originally made, but raised the grade and concreted the same to the boundary of appellees' land. They allege *by the raising of the grade an additional right of way was acquired over and above the original grant.* (Our italics.) It is also alleged that it will be necessary to construct bridges at great cost to reach the road from the land.

There is an additional allegation in the counterclaim, or cross-complaint, of James Patten that he had constructed extensive levies upon his land, and that by raising of the roadbeds they have become useless and will be eventually washed out, wholly destroyed, and water will remain longer upon his land to his great damage.

Both the appellant and appellees speak of supplemental counterclaims and cross-complaints filed by the appellees. Such pleadings were denominated as such, but, as we construe them, they are not in any sense supplemental pleadings. A supplemental pleading, as the name implies, is one consisting of facts arising since the filing of the original.

In the pleading, denominated supplemental, filed by McKinney, as administrator of estate of James C. Patten, deceased, there were two paragraphs of complaint. There are no new facts set out in the first paragraph that arose since the filing of the first counterclaim or cross-complaint, and the same may be said of paragraph two. The prayer of the second paragraph asked that appraisers be appointed to assess the damages done to the land.

The pleading, denominated supplemental, of William T. Patten, consisted of two paragraphs and no new facts set out that arose since the filing of the original counterclaim. In the second paragraph, the prayer was that

appraisers be appointed to assess damages done to the land.

It is not mentioned in the body of the pleading of either appellee that the pleading filed was a supplemental one; and, in fact, they were not. Facts existing when the action was commenced cannot be brought into the case by a supplemental complaint, but only such facts arising since the filing of the original. The pleadings filed can only be considered as additional paragraphs of counterclaim or cross-complaint.

It is to be remembered that the original counterclaims or cross-complaints were filed September 1, 1930. The report of the appraisers was filed May 16, 1930. No exceptions were filed by appellees as provided for in section 3-1707, Burns 1933.

The State of Indiana filed a demurrer to the counterclaim, or cross-complaint, of each of the appellees, and the demurrer is based upon the same grounds as to each, and is as follows:

1. That the Greene Circuit Court has no jurisdiction of the person of the State of Indiana.
2. That the Greene Circuit Court has no jurisdiction over the subject-matter of the action attempted to be presented by said cross-complaint and/or counterclaim.
3. That said cross-complaint and/or counterclaim does not state facts sufficient to constitute a cause of action.

It is insisted by appellees that the court did not err in overruling the demurrers for the reason they were addressed to the supplemental cross-complaints and counterclaims. The caption of the demurrers were so denominated, but we have heretofore held the pleadings designated by appellees as supplemental were in fact not supplemental, and that, if any effect is to be given them, they would be considered

as additional paragraphs of cross-complaint, or counterclaims.

"The name given to a pleading, however, does not always truly characterize it. It is the material facts incorporated therein that determine its force and effect." *New York Life Insurance Co.* v. *Adams* (1930), 202 Ind. 493, 496, 176 N. E. 146.

The causes for demurrer as set out were directed to the cross-complaints, or counterclaims, and we will so consider the demurrer.

The lower court sustained the motion of the appellant to dismiss the condemnation proceedings, and the appellees at the time and now contend that this was error. We think there can be no doubt that the State had the right to do this, and that the court was correct in sustaining the motion to dismiss. It is generally held that in the absence of express statutory provisions the condemnor may dismiss and discontinue his action. 2 Lewis Eminent Domain 1669; *Brokaw* v. *The City of Terre Haute* (1884), 97 Ind. 451; *Sowers et al.* v. *Cincinnati, Richmond & Muncie Railroad et al.* (1904), 162 Ind. 676, 71 N. E. 134. In this the appellees, in their brief, admit that under certain conditions condemnation proceedings may be properly dismissed, but in the instant case the dismissal and abandonment was improper for: (a) The Highway Commission destroyed bridges built by appellees; (b) the abandonment was not in good faith: (c) the appellees were not restored to the same situation as they were when the condemnation proceedings were instituted; (d) appellees had vested rights growing out of the improvement of the highway.

It is to be remembered that absolutely nothing was done on the highway pursuant to the condemnation proceedings instituted by the commission; all the plans thereunder were abandoned, and plans and specifica-

tions were made to raise the grade of the old road, and surface the same. This work was done without taking any additional land to accomplish the same. The evidence shows the appellees had prior to the time of raising the road built one or two bridges of poles and boards to reach the road from their land, and by the raising of the grade the usefulness of this bridge would be destroyed. The fact that appellees had built such a bridge to reach the highway would certainly not give them such a vested right as would preclude the commission from raising the grade of the road when public necessity required it.

We cannot see that the question of good or bad faith had anything to do with the right to dismiss. If, however, when, as here, the appraisement fixed the damages at $49,000, and the commissioners believed that the State would not be justified to proceed with the improvement on account of the cost, and that the old right of way could be reconstructed to answer all purposes, then it would not be said they were not acting in good faith. A man of prudence generally relinquishes a project when he finds the cost greatly out of proportion to its benefits, and in the interest of the public this rule would apply to the agents of the State.

It is further insisted that appellees were not restored to the same situation as they were when the condemnation proceedings were instituted. It is sufficient to say that the condemnation proceedings had nothing to do with the work done on the old right of way. This work was independent and apart from those proceedings, and they were abandoned. No additional land was taken, but the old grade raised. If, under a condemnation proceeding, the condemnor takes possession of the property and does an affirmative act and then abandons the proceedings, and such affirmative act has caused damage, the condemnee would ordinarily be entitled to recover

his damage. *Sowers* v. *Cincinnati R. R.*, *supra*. We have, however, no such state of facts in the instant case.

It is the theory of the appellees that the State Highway Commission in raising the grade of the highway caused an additional taking over and above the original grant in that it will require bridges to be built to reach and come from their land, and that ditches and levees will be useless and destroyed, and, furthermore, that the highway as now constructed will hold the water longer on said land to its damage. We cannot agree with this contention.

The leading case in this country on the question involved is that of *Callender* v. *Marsh* (1823), 18 Mass. (1 Pick.) 417, 430. Lewis, in his work on Eminent Domain, vol. 1, section 131, 3rd ed., in discussing the foregoing case says:

> "The defendant, acting as highway surveyor for the city of Boston, cut down the street in front of plaintiff's house so as to lay bare its walls and endanger its falling, to remedy which he was obliged to incur large expense. The court having determined that the work was authorized by legislative enactment, proceeded to consider whether the plaintiff's property was *taken* within the meaning of the constitution, and whether he could recover upon any ground. This question they solved in the negative. The court held this provision applied only to property actually taken and appropriated by the government, and not to consequential damages; that when the highway was established, whether by condemnation or otherwise, the public acquired not only the right to pass over the surface in the state it was in when first made a street, but also the right to repair and amend the street in such manner as the public needs might from time to time require; that the liability to damages by such alterations was a proper subject for the inquiry for those who laid out the road, or, if the title was acquired by purchase, the proprietor might claim compensation not only for the land taken, but for such damages, and that persons purchasing upon a

street after the lay-out, were supposed to indemnify themselves against loss by reason of further improvements or to take the chance of such improvements."

After discussing this case and many others, Lewis lays down the doctrine that it has been held in nearly every state in the Union that there can be no recovery for damages to abutting property resulting from a mere change of grade in the street in front of it.

In the case of *Cleveland, Cincinnati, Chicago and St. Louis Railway Company* v. *Hadley et al.* (1913), 179 Ind. 429, 101 N. E. 473, the court quotes with approval the following from 2 Lewis, Eminent Domain (3rd ed.), section 830:

" 'The condemnor may bind itself to a specified plan of construction or specified use of the property and have the damages assessed upon that basis. In that case an action can be maintained for any damage caused by a subsequent change in the works or use. So if the damages were in fact assessed on the basis of a certain mode of construction, by the procurement or acquiescence of the parties, it has been held that this fact may be shown and relief obtained in case of a change of construction. But if there has been no such limitation in the condemnation, the condemnor acquires the right to change its works, or increase or change the use of the property as it may deem best, so long as it exercises due care and skill in so doing, and keeps within the purpose of the original appropriation, and no action will lie for damages caused by such changes.' "

And the court in the foregoing case also quoted with approval from the case of *Brainard* v. *Clapp* (1852), 10 Cush. (Mass.) 6, 57 Am. Dec. 74, the following (p. 10):

". . . the right and power of the company to use the land within their limits, may not only be exercised originally, when their road is first laid out, but continues to exist afterwards; and if, after they have commenced operations, it is found necessary, in the judgment of the company, to make further uses of the land assigned to them, for pur-

poses incident to the safe and beneficial occupation of the road, by raising or lowering grades, cutting down hills, and removing trees, they have a right to do so to the same extent as when the railroad was originally laid out and constructed." Citing many cases.

One of the latest expressions of this court upon the question here presented is found in the case of *Cleveland, C. C. & St. L. R. Company* v. *Smith* (1923), 192 Ind. 674, 678, 138 N. E. 347, wherein the court said:

"No doubt a railroad company, by contractual stipulations in the instrument of appropriation by which it takes land for a right of way as set out in its complaint, may bind itself so to construct and maintain the railroad as to avoid inflicting damage which it otherwise might have the right to cause. . . .

"But in the absence of any such contractual stipulations the damages must be assessed once for all, on the basis that the railroad company will have the right to construct its works in any way it pleases, which is not negligent or unlawful, and does not violate the rights of adjacent landowners, and to change the mode of construction at pleasure, subject to the same limitations, without payment of further damages."

In the case of *Frank Cassidy* v. *Old Colony Railroad Company* (1886), 141 Mass. 174, 177, 5 N. E. 142, Justice Holmes, speaking for the court, said:

"The taking of land for a railroad 'is an appropriation of the land to all the uses of the land for the road, necessary and incidental. . . . Practically the damages are commonly equal to the value of the land. . . . The right and power of the company to use the land within their limits may not only be exercised originally, when their road is first laid out, but continues to exist afterwards; and if, after they have commenced operations, it is found necessary, in the judgment of the company, to make further uses of the land assigned to them, for purposes incident to the safe and beneficial occupation of the road, by raising or lowering grades, cutting

down hills, and removing trees, they have a right to do so to the same extent as when the railroad was originally laid out and constructed.' "

Another case often cited is that of *The City of Pontiac* v. *Emeline Carter* (1875), 32 Mich. 164, 165, 172, the opinion being written by Justice Cooley. This case was an action for damages in raising the grade of a street. He said: "The weight of authority against this action is overwhelming." He then quoted at length from the case of *Callender* v. *Marsh, supra.* He further said:

"The injury in all these cases is incidental to an exercise of public authority, which in itself must be assumed to be proper, because it is had by a public body acting within its jurisdiction, and not charged with malice or want of good faith. It must, therefore, be regarded as an injury that every citizen must contemplate as one that with more or less likelihood might happen. When the land was taken for the street, if damages were assessed, they would cover this possible injury, and it could never be known subsequently, that the jury in estimating them did not calculate upon a change in the grade of the proposed street as probable, and attach considerable importance to it in their estimate. It is matter of common observation that much beyond the value of land taken is sometimes given in these cases; not because of any present injury, but because contingencies cannot be fully foreseen. And the rule in such cases is, that all possible damages are covered by the award, except such as may result from an improper or negligent construction of the public work, or from an excess of authority in constructing it. In other words, the award covers all damages resulting from the doing in a proper manner whatever the public authorities have the right to do; but it does not cover injuries from negligence, or from trespasses. (Cases cited.) And one who gives his land for the purposes of a public way is supposed to contemplate all the same contingencies, and to make the gifts on the supposition that the incidental benefits will equal or exceed all possible incidental injuries."

The Supreme Court of the United States in the case of *Sauer* v. *New York* (1906), 206 U. S. 536, 545, 27 S. Ct. Rep. 686, said:

"The doctrine of the courts everywhere, both in England and in this county (unless Ohio and Kentucky are excepted), is that so long as there is no application of the streets to purposes other than those of a highway, any establishment or change of grade made lawfully, and not negligently performed, does not impose an additional servitude upon the street, and hence is not within the constitutional inhibition against taking private property without compensation, and is not the basis of an action for damages, unless there be an express statute to that effect. That this is the rule . . . is too well established by the decisions of this court to require the citation of authorities of other jurisdictions."

We have no statute in this state, of which we have knowledge, that makes any provision for the payment of damages with reference to the change of an existing highway grade where no additional land is taken. We do have a statute which makes provisions for a change of the grade of a street in certain class cities and for the payment of damages therefor. Section 48-2703, Burns 1933.

Applying the law, as we have found it to be, to the facts in the instant case, and conceding that the counterclaim, such as here, is a proper one to be filed in a condemnation proceeding, does it state facts sufficient to constitute a cause of action? The answer must be in the negative. The commission merely raised the grade of the road and resurfaced it without taking any additional land; no negligence is charged in making the improvements. It is charged in the counterclaim that appellees in consideration of $1 deeded to the commission a right of way through said land for road purposes in order to raise the grade and put metal thereon. It is true appellees allege that plans and specifications were

submitted to them, but it is not alleged that any limitations were placed in the deed as to the manner or height of any grade to be made, and no deed was offered or introduced in evidence that we have been able to find. When the appellees granted to the commission the right of way they then had the right and the power to limit the height of the grade of the roadbed; and, if the commission had not seen fit to accept the limitations, it could have then condemned the land and so use it in the most advantageous manner for road purposes, and damages would have been fixed as provided by statute. The State Highway Commission had the right to purchase the land or acquire it under the right of eminent domain. Section 36-118, Burns 1933. And, having purchased the right of way, it had the same right to raise the grade as it would have had if it had obtained the same by condemnation proceedings, without being liable for damages to the appellees other than originally fixed. If the right of way had been procured by condemnation proceedings, all possible damages would have then been awarded except such as might have resulted from an improper or negligent construction of the improvement. As the right of way was granted by deed, without limitation, the appellees waived any action for damages on account of the change of grade except such as might result from an improper or negligent construction of the improvement. There is no charge of improper or negligent construction.

As heretofore stated, the appellees denominate their pleadings as counterclaims and/or cross-complaints. They seem to be uncertain and confused as to whether it is a counterclaim or cross-complaint. It must be one or the other. There is a clear distinction between the two pleadings. A counterclaim as defined by statute is as follows:

"A counterclaim is any matter arising out of or

connected with the cause of action which might be the subject of an action in favor of the defendant, or which would tend to reduce the plaintiff's claim or demand for damages." §2-1018, Burns 1933.

There is no statutory authority for filing a cross-complaint except in divorce actions where the defendant is given authority to file a cross-petition for divorce. It has been thoroughly settled by the decisions of our courts that "If a cross-proceeding be against the plaintiff, and grows out of the subject-matter of the cause of action set up in the complaint, the pleading is a counterclaim. On the other hand, a pleading filed by one defendant against one or more co-defendants, and showing that he is entitled to relief against him or them (and perhaps others than the defendants), is a cross-complaint." 1 Watson Works Prac., section 705.

It is clear, we think, that the matters attempted to be pleaded would constitute a counterclaim. It has been repeatedly held by this court that the terms of the statute defining a counterclaim indicate that there are two classes of counterclaims:

1. Such as embrace matters that go merely in mitigation of damages; and
2. Such as are based upon matters that may be the subject of an action in favor of the defendant against the plaintiff. 1 Watson R. Works Prac., 672.

Does the counterclaim of appellees contain any matter arising out of or connected with the cause of action which might be the subject of an action in favor of the defendant? Clearly not. The appellees assert that the acts done by the State Highway Commission amount to an additional taking. We have held otherwise. The acts as alleged would constitute a tort, and for this an action will not lie against the State. Section 24 of Article 4 of our Constitution gives the legislative department authority to make provisions by general law for bringing suit against the State, as to

all liabilities originating after the adoption of the Constitution; but no special act authorizing such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed. The only provision for bringing suit against the State is provided in section 1550, Burns' Ann. St. 1926, §4-1501, Burns 1933, and it provides:

> "Any person or persons having or claiming to have a money demand against the state of Indiana, arising, at law or in equity, out of contract, express or implied, accruing within fifteen (15) years from the time of the commencement of the action, may bring suit against the state therefor in the superior court of Marion County, Indiana, . . ."

The matter pleaded did not arise out of contract, express or implied, and, therefore, cannot be maintained. The appellees, in their amended objections to the dismissal of the proceedings by the appellant (pp. 55 and 56 of the transcript), agree with this statement, for in their motion they state:

> "Said defendants further say that the State of Indiana is dissatisfied with the award of the appraisers herein and said dissatisfaction occasioned said change in said plans and specifications and is threatening to and will, if allowed by the court, dismiss said proceedings in condemnation. That these defendants have no recourse if said cause of action be dismissed, as there is no provision in law for suing the State of Indiana for any damages done to lands by the construction of State Highways, but it is only where one has a cause of action arising out of contract, express or implied, with the State of Indiana, that it can be sued, and that is only by virtue of an enactment of the State Legislature. That if this cause of action be dismissed, these defendants will be wholly without remedy. . . ."

The demurrer to the counterclaim should have been sustained and the court erred in overruling the same.

Judgment reversed.