**Chester D. ELDER and Carol A. Elder, Appellants (Defendants Below),**

v.

**STATE of Indiana ex rel. the DEPARTMENT OF NATURAL RESOURCES, Appellee (Plaintiff Below).**

**No. 2–883A304.**

Court of Appeals of Indiana, Second District.

Oct. 3, 1985.

**1384**

Mark C. Guenin, Johnston, Lehman & Guenin, Wabash, for appellants.

Linley E. Pearson, Atty. Gen., Michael Schaefer, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Chester and Carol Elder (Elders) appeal the trial court's entry of summary judgment in favor of the Department of Natural Resources (DNR) on the Elders' claim for inverse condemnation of their lakefront property. The trial court specifically found the Elders' had released all claims to damages by an earlier consent decree between the parties.

We affirm.

## FACTS

The Elders are realtors and developers who owned approximately 78 acres of undeveloped property on the shoreline of Lake Wawasee, a public freshwater lake. In approximately October of 1975 the Elders began developing their real estate by depositing fill material along the shoreline. On June 25, 1976, the DNR sought an injunction against the Elders' activities, alleging the Elders had failed to obtain or apply for a permit[1] to change or affect the lake level or shoreline of Lake Wawasee. The suit for an injunction culminated in a "consent decree" entered into between the parties upon which judgment was entered on March 21, 1979.

The consent decree incorporated a map which divided the Elders' acreage into 5 separate parcels numbered 5 through 9. The provisions of the consent decree released two parcels, totalling approximately 55 acres, for development without compliance with any permit requirement, although it subjected a portion of this property to certain development restrictions and required partial removal of the allegedly illegal fill. Approximately 23 acres of land were conveyed to the DNR together with an access easement. Specifically, Parcel 5 was released for development "without the necessity of applying for or obtaining any permits" from the DNR. Record at 55. Parcels 6 and 7, consisting of approximately 23 acres, were to be conveyed by warranty deed to the DNR. Parcel 8, consisting of approximately 2.6 acres, was retained by the Elders subject to a restriction of development only for a one family estate. Parcel 9, consisting of approximately .7 acres, was subject to a conservation easement. The Elders agreed to remove a portion of the fill material deposited on the shoreline of Parcel 9 within 18 months.

The Elders also agreed to convey an access easement in favor of the DNR over Parcels 5, 8 and 9. The consent decree in turn required the DNR to survey parcels 6, 7, 8 and 9 "within six (6) months of entry of this order for the purpose of making a precise legal description." Record at 56.

On October 29, 1980, the DNR petitioned for an order to show cause why the Elders should not be found in contempt for their failure to convey Parcels 6 and 7 and to remove the fill from Parcel 9.

On February 27, 1981, in response to the rule to show cause, the Elders, pro se, filed a pleading denominated as an "Answer Cross-Claim, Petition to Show Why Should Not be Found in Contempt." On March 17, 1981 the DNR filed a Motion to Dismiss the Elders' "counterclaim". The court held a hearing on "all pending matters" on April 20, 1981. On June 15, 1981, before the court entered any ruling, the Elders, now with counsel, filed a pleading denominated "Defendants Motion to Set Aside Consent Decree." At this point, it is important to note the contents of the motion to set aside were broader than the motion's title.[2] In addition to seeking to have the consent decree vacated on the basis of DNR's alleged breach of the consent decree and lack of consideration, the motion alternatively sought a determination the consent decree, if enforced, constituted a "taking of property" and prayed for a "hearing to establish the fair market value of property taken." Record at 86.

The DNR filed its response to the motion on September 1, 1981, the same date the motion was heard and taken under advisement. On November 19, 1981 the part of the "motion" seeking the vacation of the consent decree was denied. Then, in a December 29, 1981 entry [December entry], the court held the March 5, 1979 Consent

---

1. *See* Ind.Code Ann. § 13–2–11–2 (Burns Repl. 1981) (repealed) and Ind. Code Ann. § 13–2–14–1 (Burns Repl.1981) (repealed). See now Ind.Code Ann. § 13–2–11.1–5 (Burns Supp. 1984).

2. We therefore focus on the substance rather than the form of the motion. *Town of St. John v. Home Builders Association of Northern Indiana,* 428 N.E.2d 1299 (Ind.App.1981).

Decree constituted a "taking by the [DNR] of interests in the lands of the [Elders] for a public use for which [the Elders] are entitled to receive just compensation." Record at 125. The court ordered the DNR to file exact legal descriptions for the relevant parcels, allowed the Elders ten (10) days to file written objections to the descriptions, and appointed appraisers. The trial court, *sua sponte*, certified its judgment for appeal.[3] On January 12, 1982 the DNR filed a praecipe but did not perfect an appeal.

On April 1, 1982 the DNR filed the legal descriptions ordered by the trial court. On July 13, the Elders executed the deeds and other documents necessary to comply with the original consent decree.

On November 12, 1982 the appraisers submitted their assessment of damages in the amount of $633,058.00. The DNR filed its exceptions to the appraiser's report and a demand for a jury trial.

On March 23, 1983 the DNR filed a motion for summary judgment claiming the Elders' claim was barred by the effect of the consent decree. The DNR specifically called attention to the concluding paragraph of the consent decree which contained a "release" of all claims or counterclaims between the parties and a statement of the trial court's continuing jurisdiction to "resolve and enforce" the rights of the parties.

The Elders filed a motion to strike the DNR's motion for summary judgment as repetitive of the DNR's earlier Motion to Dismiss filed on March 17, 1981. After argument, the trial court granted the DNR's motion for summary judgment concluding that the consent decree was sup-

ported by valid consideration and was a final judgment barring the Elders' claim for damages due to any taking. Record at 254.

The Elders filed a motion to correct errors and perfected this appeal. Specifically, the Elders raise the following issues for review:

I. Whether the trial court erred in considering the DNR's motion for summary judgment after the DNR had failed to appeal the trial court's certified December entry and after the trial court had denied the DNR's earlier motion to dismiss which raised the same issue as the motion for summary judgment?

II. If the trial court properly considered the DNR's motion for summary judgment, did it err in granting the motion for summary judgment, did it err in granting the motion by concluding the consent decree was a valid final judgment which barred the Elder's claim for compensation?

## DISCUSSION

### I.

The Elders claim the trial court's May 6, 1983 judgment is erroneous because the DNR's motion for summary judgment was precluded by the trial court's earlier order which found a taking had occurred and which appointed appraisers.

This claim is first based upon their argument that when DNR failed to appeal the December entry it became the law of the case. The Elders argue the trial court's December entry, concluding the consent decree effected a taking without compensation, constituted a final judgment because

---

**3.** The trial court's order contains the following conclusion:

"The Court now expressly determines that there is no just reason for delay in entering judgment for Defendants Chester D. Elder and Carol A. Elder and against the Plaintiff on the issue of whether the interests in the lands of said Defendants acquired by the Plaintiff by reason of the Consent Decree entered herein

on March 5, 1979 was a taking of interests in the lands of said Defendants for which said Defendants are required to receive just compensation and entry of judgment for said Defendants on those issues should be and the same is now directed and entered by the Court."

Record at 128.

it included Ind.Rules of Procedure, Trial Rule 54(B) certification language.[4] Hence, they argue the trial court was divested of its power to reconsider or modify the judgment because, as an unappealed final judgment, it became the law of the case. We disagree. The December entry was not an appealable final judgment because the trial court abused its discretion in "finalizing" the entry.

T.R. 54(B) follows the federal rule and, in addition, codifies the federal case law concerning the circumstances under which a judgment upon less than all the issues is appealable. *Geyer v. City of Logansport,* 317 N.E.2d 893 (Ind.App.1974). Accordingly, federal decisions construing and applying Fed.R.Civ.P. 54(b) are proper subjects for our consideration.

In *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956) the Supreme Court held that a trial court's certification remains subject to review for abuse of discretion and, further, the appellate court is not bound by the trial court's determination as to whether there were multiple claims presented in the cause. Also, in *Liberty Mutual Insurance Co. v. Wetzel,* 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976) the Supreme Court recognized the appellate court's right to raise, *sua sponte,* the issue of the propriety of the trial court's certification inasmuch as it involves the question of the "jurisdiction" of the appellate court to entertain the appeal. We find these doctrines persuasive and adopt them.

▪ T.R. 54(B) requires the existence of multiple claims or multiple parties as a predicate for relief. It does not apply to a single claim action.[5] *Mackey,* 351 U.S. 427, 76 S.Ct. 895.

▪ Their inverse condemnation claim advanced a single legal theory which was applied to one set of facts. The DNR, via the consent decree, "took" their property without compensation.[6] Thus, they presented but a single claim which can not be certified under T.R. 54(B). Consequently, the trial court abused its discretion in *sua sponte* "certifying" an interlocutory order for review.[7] Because the December entry was an interlocutory order, uncertifiable under T.R. 54(B), the trial court retained the power to reconsider its Decem-

---

**4.** Trial Rule 54(B) provides:
"When more than one [1] claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. A judgment as to one or more but fewer than all of the claims or parties is final when the court in writing expressly determines that there is no just reason for delay, and in writing expressly directs entry of judgment, and an appeal may be taken upon this or other issues resolved by the judgment; but in other cases a judgment, decision or order as to less than all the claims and parties is not final."

**5.** The multiple party aspect of Ind.Rules of Procedure, Trial Rule 54(B) is not an issue. The trial court did not enter a judgment as to less than all the parties.

**6.** The Elders claimed in their motion to set aside the consent decree that the consent decree, if enforced, constituted the taking without just compensation.
The inverse condemnation action must be analyzed as if it had been properly separately filed as a new and distinct cause of action.

**7.** An order determining that a taking has occurred and appointing appraisers is an interlocutory order which the asserted condemnor has no right to appeal. *Evansville-Vanderburgh Levee Authority District v. Towne Motel, Inc.,* 247 Ind. 161, 213 N.E.2d 705 (1966).

ber entry even after the DNR filed its first praecipe.[8]

■ The Elders alternatively argue the DNR's motion for summary judgment was repetitive[9] of the DNR's earlier Motion to Dismiss, denied by the trial court, because both motions raised the release[10] in the consent decree as a bar to the Elder's claim for a taking. It is well-settled, however, that a trial court has inherent power to reconsider, vacate or modify any of its previous rulings as long as the cause remains *in fieri. See e.g., Wisconics Engineering, Inc. v. Fisher,* 466 N.E.2d 745 (Ind.App. 1984). In the absence of a final judgment in the inverse condemnation action the trial court was authorized to reconsider the legal effect of the consent decree.

■ Although the Elders recognize the court's discretion to reconsider prior rulings, they argue the trial court abused its discretion because fifteen months had passed between the December entry and the court's reconsideration of the December entry during which time they allege they relied on the trial court's initial determination. However, they fail to demonstrate or allege any prejudice to pursue the merits of their cause as a result of the trial court's reconsideration other than procedures during the interim months to enforce the terms of the consent decree. Without any demonstrated prejudice we cannot say the trial court abused its discretion by reconsidering the December entry. Inasmuch as the trial court had the power to reconsider its interlocutory December entry, we now turn to the propriety of the trial court's ruling upon reconsideration.

## II.

The Elders claim the trial court's grant of summary judgment on May 6, 1983 was erroneous because the March 3, 1979 consent decree was not a final judgment but merely an agreement to agree as evidenced by the trial court's retention of jurisdiction "to resolve and enforce the rights and responsibilities placed on the parties in this [consent decree.]" Record at 56. They claim that until legal descriptions were determined, surveys made, deeds delivered, and compensation paid, an agreement was not had and, accordingly, the consent decree was not a final judgment.[11]

We disagree.

■ A consent decree is in the nature of an agreement or contract to cease activities asserted as illegal by a governmental entity. *Black's Law Dictionary* 370 (5th ed. 1979).

However, once sanctioned by the court it is an adjudication which has res judicata effect. 1B J. Moore, *Moores Federal Practice* ¶ 0.409[5] (2d ed. 1984). Consequently, a consent decree is an unappealable final judgment:

"That the judgment was rendered by consent of the parties does not detract from its dignity, or lessen its conclusiveness as an adjudication between the parties, but the consent is a waiver of error precluding a review upon appeal."

8. The mere filing of a praecipe does not deprive the trial court of its jurisdiction over the cause. Ind.Rules of Procedure, Appellate Rule. *Coulson v. Indiana & Michigan Electric Co.,* 471 N.E.2d 278, 279 (Ind.1984).

9. The Elders therefore characterize the DNR's motion for summary judgment as an improper motion for reconsideration under Ind.Rules of Procedure, Trial Rule 53.4.

10. The consent decree provided:
"Any and all other claims or counterclaims against or between the parties to this action relative to the property described in Exhibit 'A' to plaintiff's Complaint [i.e.], all the parcels combined] are hereby extinguished.

11. The Elders challenge to the consent decree as lacking finality was not raised until their post-hearing brief. Prior to the hearing, the Elders initially alleged a lack of consideration and further alleged the DNR failed to comply with the provision for submission of the deeds containing the legal descriptions determined by the surveys. They concluded the DNR was, therefore, "in default" and demanded parcels 6 and 7 "if still desired by State should be purchased and all restriction[s] revoked." Record at 74.

*State v. Huebner,* 230 Ind. 461, 468, 104 N.E.2d 385, 388 (1952); *accord McNelis v. Wheeler,* 225 Ind. 148, 73 N.E.2d 339 (1947).

▇▇▇ Although the DNR delayed in providing the surveys required by the consent decree, the deficiencies enumerated by the Elders constitute only problems in the enforcement of the decree. As in all final judgments, a problem in the enforcement of a consent decree does not vitiate the decree but merely requires an application for enforcement to the trial court which entered the judgment. *Foreman v. State ex rel. Department of Natural Resources,* 180 Ind.App. 94, 387 N.E.2d 455 (1979). Thus, the provision in the consent decree upon which Elders rely (providing for the jurisdiction "to resolve and enforce the rights and responsibilities placed on the parties in this [consent decree.]") is a recognition and acknowledgement by the parties that problems of enforcement may arise in any final judgment.

▇▇▇ The consent decree was consequently entitled to res judiciata effect precluding relitigation of the same claim or cause of action; it is treated as the law of the case and, as such, fixed the rights and duties of the parties. *State Board of Tax Commissioners v. Smith,* 463 N.E.2d 493 (Ind.App. 1984). In particular, the consent decree expressly included a release,[12] which was conclusive between the parties. *See Metropolitan Sanitary District v. Ingram Corp.,* 85 Ill.2d 458, 55 Ill.Dec. 535, 426 N.E.2d 860 (1981); *Ellena v. California,* 138 Cal.Rptr. 110, 69 Cal.App.3d 245 (1977) (eminent domain concluded by stipulated judgment barred action for damages where damage issue had not been expressly withdrawn from judgment.) Thus, even if a taking occurred, "the release [was] effective as to all items of compensation which might have been claimed." Nichols on Eminent Domain § 8.81 at 8–502 (3d ed. 1978).

"Constitutional provisions do not prevent the condemnor and the landowner from entering into an agreement relating to the value of the land. The parties may bind themselves to a consideration in the constitutional sense. Such an agreement bars the prosecution of the original claim for the taking.

.    .    .    .    .

There are, ... several circumstances under which an owner's right to compensation may be extinguished or barred without payment. Such extinguishment may arise ... [b]y release or agreement to claim no damages."

*Id.* at §§ 8.72–8.8, 8.492–8.497 (footnotes omitted); *accord, State v. Patten,* 209 Ind. 482, 199 N.E. 577 (1936) (right of way granted by deed without limitation waived action for damages); Annot. 91 A.L.R. 1170 (1979). The trial court correctly found the consent decree "fully adjudicated the rights and responsibilities between the parties and constitute[d] a judgment on the merits." Record at 254. The express provisions of the consent decree extinguished any claim between the parties regarding the Elders' property.

▇▇▇ The Elders also attempt to attack the trial court's denial of their motion to set aside the consent decree. We first observe they have waived this issue by their failure to file a timely motion to correct errors addressed to the trial court's action. *Siebert Oxidermo, Inc. v. Shields,* 446 N.E.2d 332 (Ind.1983). In any event, their attack, based upon a claim of mutual mistake,[13] oppression and coercion by the DNR, and lack of consideration, is without merit.

▇▇▇ Specifically, the Elders claim the boundaries of each parcel described in the decree was an essential element of the decree and the surveys evidenced mutual mistake as to those boundaries. However,

12. *See supra* note 11.

13. Mutual mistake, as a theory supporting the setting aside of the decree, was not raised until the Elders's post-hearing brief. Record at 106.

the trial court did not err in concluding the agreement was not the product of mutual mistake. The decree included accurate legal descriptions for each parcel. Compare *Stoneburner v. Fletcher*, 408 N.E.2d 545 (Ind.App.1980) ("Lot located immediately adjacent to the west of the within described real estate" was not insufficient). Two surveys conducted by the DNR admittedly generated a dispute regarding the precise boundaries of each parcel. The discrepancies were apparently caused by a combination of drafting errors and changes in the location of the shoreline because of the filling operations. The difficulty encountered in defining the precise boundaries was appropriately resolved in enforcement proceedings before the trial court.

The Elders also argue the DNR used its statutory power to seek an injunction against illegal fill operations to create a cloud of litigation over the property and thereby coerce the Elders into conveying their property without just compensation. In support of this argument they emphasize testimony which indicates the Elders' filling activities were not illegal. However, the testimony and exhibits on this point were conflicting. The evidence and reasonable inferences therefrom supported the pursuit of an injunction to curtail the Elders' filling activities. In any event, the bare allegations of fraud and coercion were not within the scope of the Elders' motions to set aside the consent decree. Their failure to raise this issue until their motion to correct errors resulted in waiver.

With regard to consideration, as an issue in the motion to vacate, the Elders retained parcel 8, a lakeshore parcel, subject to a restriction of development for a one-family estate. The Elders also retained parcel 9 subject to a conservation easement. The DNR originally claimed both parcels were "created" by depositing fill material into Lake Wawasee without the approval of the DNR as required by statute. The DNR is empowered with the discretion to issue permits for the changing of a shoreline for development purposes. Ind.Code § 13–2–11.1–5 (Burns Supp.1984). The DNR is authorized to bring an action for injunction against anyone changing the shoreline of a public freshwater lake without having first obtained a permit from the DNR. Ind.Code § 13–2–11.1–12 (Burns Supp.1984). Had the DNR been successful in its suit for an injunction, the court could have required the Elders to remove the illegal fill, thereby apparently obliterating parcels 8 and 9, and restoring the shoreline to its original condition. *DeMayo v. State*, 182 Ind.App. 241, 394 N.E.2d 258 (1979). The consent decree merely restricted the use of parcels 8 and 9 in exchange for the conveyance of parcels 6 and 7. The Elders' retention of parcels 8 and 9 was sufficient consideration for the consent decree.

The trial court correctly concluded the consent decree finally disposed of all claims between the parties regarding the Elders' real estate on Lake Wawasee.

Judgment affirmed.

BUCHANAN, C. J., and SULLIVAN, J., concur.