**Alice WARNASCH et al., Appellants,**

v.

**R. P. WAGNER, Sr., et al., Appellees.**

**No. 12943.**

Court of Civil Appeals of Texas.

Galveston.

May 17, 1956.

Rehearing Denied June 7, 1956.

J. P. Hart, La Grange, and E. H. Pratka, Jr., Columbus, for appellants.

W. D. Bryan, Sealy, and Richard Spinn, Brenham, for appellees.

GANNON, Justice.

This is an appeal by Alice Warnasch, Caro Lynn Warnasch, and Louise Krivacka, joined by her husband, Joe Krivacka, hereinafter referred to collectively as the Warnasches, from an order of the District Court of Austin County of July 5, 1955. The order is in the form of a mandatory injunction commanding the Warnasches to construct, at their own cost and expense and in compliance with the provisions of an agreed judgment theretofore entered in the cause on January 6, 1954, two certain cattle guards, one at the southwest corner of the Wagner 26 acre tract and one at the northwest corner of the Neumann property. Though signed on July 5, 1955, the order was entered as of June 9, 1955, and directed compliance with the order and completion of the cattle guards within a period of sixty days. A further provision requires the Warnasches to report back their compliance with the command of the court not later than sixty days from the date of the order. This provision includes a recital that their failure to so report compliance with the order shall render the Warnasches and each of them in contempt of court "and they shall remain in contempt of this court until they shall have purged themselves by performing the orders, judgments and mandatory decrees of this court as herein set forth."

The appeal is on a cost bond only, but we have not been called upon, pending the appeal, to exercise our discretion to punish for contempt of the trial court's order. Ex parte Kimbrough, 1941, 135 Tex. 624, 146 S.W.2d 371; Ex parte Travis, 1934, 123 Tex. 480, 73 S.W.2d 487.

■ The proceedings out of which the mandatory injunction finally emerged were initiated on December 24, 1953, on the petition of the Warnasches, complaining of R. P. Wagner, Sr., and Joe Angle, as defendants. The object of the petition was to establish in plaintiffs a roadway easement or easements over the lands of defendants, each and both. Defendants Wagner and Angle were duly cited and filed answers contesting the claimed rights of the Warnasches.

Pending a trial of the case, an agreement was worked out between the plaintiffs and defendants to which one Carl D. Neumann made himself a party. By the terms of the agreement, the Warnasches were granted a right of way over the lands of Wagner, Angle and Neumann so as to give them convenient access to the public road. As a part of the agreement the Warnasches undertook at their own expense to grade and otherwise put the roadway easement in shape for travel, and specifically agreed as follows:

"Further, that a cattle guard must be built and maintained by the Warnasches at the Southwest corner of the Wagner 26 acre tract and a cattle guard must be maintained by the Warnasches at the Northwest corner of the Neumann property where now is, or heretofore has been, a wire gap; and that they may have a gate in addition to such cattle guard if they wish." There are other provisions of the written agreement of settlement not important here. The agreement is signed by all parties to the controversy, as well as their attorneys and by Carl D. Neumann, who approved the agreement for entry as the judgment of the court.

The agreement of the parties was entered as the judgment of the court. The judgment begins:

"It is agreed in open court between all parties to this suit as well as by other parties whose lands are affected by the settlement as hereinafter set out: * * *." There then follows the detail of the agreement, including the grant of "a new road" as well as the executory provisions binding the Warnasches to the improvement of the roadway, including their executory commitment to install the cattle guards on the Wagner and Neumann properties. The Judgment concludes:

"14. The above and foregoing agreement having been announced in open court before all parties present and all parties

having signified to the Court their approval thereof, the same is hereby adopted by the Court and shall constitute a final judgment in this cause from which no party to this cause has evidenced any right of appeal." The foregoing judgment of the court was signed on January 5, 1954.

More than eleven months later, and on November 24, 1954, R. P. Wagner, Sr. and Joe Angle, the original defendants, joined by Carl D. Neumann, who had made himself a party to the agreement and to the judgment, filed a motion designated Petitioners' First Amended Original Motion to Enforce Judgment. This recites the non-compliance by the Warnasches with their agreement to install cattle guards; the full performance by petitioners of all obligations resting upon them under the terms of the agreed judgment, and proceeds: "These Petitioners make known to the Court that primarily they prefer the specific enforcement of the terms of said Judgment for the reason that they entered into said Judgment, as set out in paragraph 12 thereof, with the view toward bringing about peace and harmony among all of the neighbors therein involved, * * *." Other language of the petition for enforcement of the judgment asks the court to take jurisdiction through its judgment, and prays for a show cause order to the Warnasches commanding them to appear and show cause, if any they have, why the cattle guards in controversy should not be constructed by them as provided in the prior agreed judgment. There is also a prayer that upon the failure of the Warnasches to construct the cattle guards as agreed the court appoint a commissioner to carry out the Warnasches' obligation to build and construct the cattle guards, the cost to be charged against the Warnasches. By an additional paragraph of the motion, and in the alternative, the petitioners for the enforcement of the judgment ask that the Warnasches be held in contempt of court.

The record does not expressly show notice or citation to the Warnasches on the petition for the enforcement of the judgment; however, some months later, and on June 9, 1955, the Warnasches filed their reply thereto. By this reply, the Warnasches contended, among other things, that the judgment originally entered on January 5, 1954, was a consent judgment in the nature of a contract; that the petitioners' motion to enforce it was in the nature of a suit for specific performance and that the contract as evidenced by the judgment was not specifically enforceable because (a) petitioners had available an adequate remedy at law in the nature of a damage suit for a money judgment, (b) because the specific enforcement of the judgment would require constant and continuing supervision and direction by the court over a long period of time, (c) because the contract was one for personal labor and acts, and (d) because the contract was lacking in mutuality of remedy. Additionally the Warnasches defended against specific performance on the ground that the contract was indefinite and neither fair nor equitable in its terms.

The judgment of the court whereby the court adopts the executory agreement of the parties and constitutes the same the final judgment in the case is, in our opinion, on analysis, no more than a dismissal order by agreement following settlement between the parties. The judgment neither grants nor denies any relief sought in the pleadings before the court, nor does it command, order, adjudge, decree, or restrain anything. In fact, it includes no provision in the nature of an order or decree, unless it be the establishment of the existence of the contract between the parties and the various terms and provisions thereof. Certainly there was no attempt by the judgment to adjudicate the substantial rights of the parties to the contract and the remedies available to them for the enforcement of such rights. Compare the consent judgment involved here with the judgment of the district court of Coleman County involved in Allen v. Woodward, 1922, 111 Tex. 457, 239 S.W. 602, 22 A.L.R. 1253. The judgment in that case in terms ordered the issuance of a mandatory writ of injunction and commanded the defendant Allen to deliver the ring, the subject matter of the suit, to any officer demanding the ring under such writ. It is readily apparent, we think, why mandamus would lie to compel the district judge

to enforce by contempt proceedings the judgment involved in Allen v. Woodward. It is equally apparent, we feel, why such mandamus would not lie in the instant matter.

We are, therefore, forced to the conclusion that the motion to enforce the judgment filed in November of 1954, was a pleading in the nature of an independent suit seeking specific performance of the executory contract between the parties and that the order appealed from is actually one requiring specific performance by the Warnasches of their executory contract to construct improvements on lands not owned or controlled by them, but rather on lands owned and controlled by the petitioning parties. The practice of filing in a prior disposed of case a motion or application in the nature of an independent suit was recognized as proper at an early date. See McFarland v. Hall's Heirs, 17 Tex. 676. The practice continues to the present. Easterly v. Filidei, Tex.Civ.App., 287 S.W. 2d 749.

On original submission, appellants relied upon a single point for reversal. This point read as follows:

"This case should be reversed and rendered because the Court erred in enforcing its agreed judgment in accordance with the rules and statutes relative to the enforcement of judgments generally." However, after submission, appellants sought and obtained leave to file an amended brief in which appellants included an additional point, reading as follows:

"This case should be reversed and rendered because the lower court erred in rendering its judgment, in effect, decreeing specific performance of the contract or agreed judgment."

■ Our action in allowing the amended brief to be filed finds support in Rules 431, 437 and 422, Texas Rules of Civil Procedure. In Texas Cities Gas Co. v. Gomez, Tex.Civ.App.1942, 160 S.W.2d 74, 77, we held it was permissible under Rule 431 for an appellant to amend its brief so "as to interpolate its second assignment of error

in its motion for a new trial below." This assignment of error had not been carried forward in appellant's original brief.

In Gillette Motor Transport Co., Inc., v. Wichita Falls & Southern R. Co., Tex.Civ. App.1943, 170 S.W.2d 629, 631, the Fort Worth court decided the question of whether a court of civil appeals may, after submission, allow an amendment of briefs in order to present points of error not presented in the original brief. The Court held such an amendment permissible, and said:

"We fully believe that the rules of procedure now in force authorize the course we have pursued in allowing an amendment of appellant's brief. A similar holding has been made by the Galveston Court of Civil Appeals. Texas Cities Gas Co. v. Gomez, 160 S.W.2d 74, writ of error refused for want of merit."

In Old Line Mut. Life Ins. Co. v. Tilger, Tex.Civ.App.1953, 264 S.W.2d 557, 560, the El Paso court considered and reversed for an error not assigned, short circuiting the formal procedure which would have required the court to permit an amendment to set up an additional point to bring the error under review. The court said:

"However, there is no point in appellant's brief which assigns error in the court's failure to grant defendant's amended motion for a new trial; therefore we are not required to consider this error. Rule 418, T.R.C.P.

"If we did not consider it for this reason justice would require that we grant appellant a reasonable time in which to amend or supplement its brief so as to interpolate this omitted point. Rules 431, 437 and 422, T.R.C.P. Texas Cities Gas Co. v. Gomez, Tex.Civ.App., 160 S.W.2d 74, (er. ref.); Gillett Motor Trans. Co. v. Wichita Falls & Southern Ry. Co., Tex.Civ.App., 170 S.W.2d 629.

"We see nothing to be gained by following this procedure since the lack of evidence to support the jury's answer to special issue No. 2 is demonstrated under appellant's first and second points. We have therefore considered the error assigned in

paragraph VIII of defendant's amended motion for a new trial, and having concluded that such error required the court to grant a new trial, we reverse the judgment and remand the cause for a new trial."

■ We regard the point made by appellants on original submission as inapplicable to the record before us, and therefore overrule it. However, we consider appellants' point brought forward in the amended brief to be well taken because we know of no theory under the pleadings and the facts which would entitle the movants below to a decree of specific performance requiring the Warnasches to construct improvements on lands under the control of the movants. It is fundamental that specific performance is an extraordinary equitable remedy and that it will never be granted where a complete, speedy and adequate remedy at law is available. Here no reason appears why the movants could not have been fully and adequately compensated by an allowance of damages in an action at law. See the annotation in 164 A.L.R., page 802 under the title "Specific Performance of Contracts Requiring Building or Construction." We quote the following from that annotation, page 804, as applicable here:

"The rule is so elementary against specific enforcement of ordinary building contracts on land in the plaintiff's control that the modern cases involve mostly large and complex construction work. In general the same rule is applied."

See also 81 C.J.S., Specific Performance, § 74, p. 582, stating the rule to be that in the absence of special circumstances rendering the legal remedy inadequate, contracts for building or construction or repair will not be specifically enforced.

■ Believing as we do, that the trial court's award to the movant petitioners of the equitable remedy of specific performance to be insupportable on any principle of equity jurisprudence, the judgment of the trial court must be reversed; and since there is no alternative prayer for a money judgment for damages, judgment will be here rendered in favor of appellants. Our order is without prejudice to the rights of appellees to file and prosecute such suit or suits for damages for breach of contract as to them may appear necessary or desirable.

Reversed and rendered.

CODY, Justice (dissenting).

I dissent from the opinion of the majority. According to their opinion, as I understand it, an agreed judgment is of no greater dignity than a simple written contract. If an agreed judgment has no greater dignity than a simple written contract why take the trouble to get a court to solemnly adopt such an agreement as its judgment?

There is no dispute here about what the parties intended should be the rights of the parties to the judgment, in virtue of such agreement. As I understand the law relative to judgments, the only reason for bringing forward the fact that a judgment was rendered by consent of the parties is for the purpose of interpreting its meaning. 25 Tex.Jur. 385, et seq. In Freeman on Judgments, Vol. 3, Sec. 1350, it is said that a consent judgment is more than a contract, "being rather the result of a contract and its embodiment in a form which places it and the matters covered by it beyond further controversy. * * *. Such a judgment has substantially the same effect as any other judgment rendered in ordinary course, and is entitled to the same presumptions."— Again, it is stated in 49 C.J.S., Judgments, § 178, p. 315, "As a consent judgment has the sanction of the court, and is entered as its determination of the controversy, it generally has the same force and effect as any other judgment, although in some respects it may be given greater force than an ordinary judgment, and in other respects it may be accorded less force. Although the judgment is in the nature of a contract between the parties, the court retains power to see that its provisions are duly carried out."

Though it is appellants' contention that appellees must bring an independent suit upon the judgment, this is not because appellants hold the opinion that they are at liberty to contest any of the facts determin-

ed in the consent judgment. They candidly admit that there is no controversy between the parties as to the facts; that such controversy was determined by their compromise or consent judgment. As indicated above, the only reason for considering the fact that the judgment was a consent one, is to get at the meaning of the judgment (and other reasons not here pertinent). As I understand appellants' contention, it is that appellees must bring an independent action on the consent judgment for the sake of the remedy which such independent action would afford, namely, that appellees would be relegated to an action for damages for appellants' breach, or to an action for specific performance. I am unable to see why appellees should be put to the trouble and expense to get a new judgment when they already have a valid one. The court has the jurisdiction to enforce its judgment even though it was agreed to by all parties. In 31 Amer.Jur., Sec. 882, it is stated, "To deprive a court of power to execute its judgments is to impair its jurisdiction, and the general rule is that every court having jurisdiction to render a particular judgment has inherent power and authority to enforce it, and to exercise equitable control over such enforcement. The court has authority to inquire whether its judgment has been executed, and will remove obstructions to the enforcement thereof. Such authority extends not only to such orders and such writs as may be necessary to carry the judgment into effect and render it binding and operative, but also to such orders as may be necessary to prevent an improper enforcement of the judgment." See also 49 C.J.S., Judgments, § 585, p. 1071.

In addition to the foregoing elementary principle which I have alluded to, I call attention to the fact that the agreed judgment, which the court adopted, superseded the pleadings which the parties had filed in the case. It is no doubt true that the judgment, which the court rendered on the agreement of the parties, effected a dismissal (i. e., superseded) of any part of the pleadings which were contrary to or which did not support the judgment which the court rendered. Hence, it would seem immaterial that, as stated by the majority, "The judgment neither grants nor denies any relief sought in the pleadings before the court [if this be true], nor does it command, order, adjudge, decree, or restrain anything. In fact, it includes no provision in the nature of a order or decree, unless it be the establishment of the existence of the contract between the parties and the various terms and provisions thereof." I disagree with the majority's conclusion, as will hereafter appear, where it goes on to hold, "Certainly there was no attempt by the judgment to adjudicate the substantial rights of the parties to the contract and the remedies available to them for the enforcement of such rights."

To my way of thinking, the majority opinion begs the question where it insists on referring to the agreed judgment as the "contract." And furthermore, when the court based its judgment on the contract, the judgment by operation of law settled and determined the "substantial rights" of the parties relative to the matter dealt with by the judgment. By the terms of the judgment appellants were obligated to construct the cattle guards according to the plans and specifications. Appellants admit that they are thereby obligated, at least to pay damages, for the failure to discharge the rights which were acquired by appellees. Appellants simply deny that appellees acquired any more than *contractual rights* by the agreed judgment.

Whether, in order for appellants to bind themselves by contract effectively to construct the cattle guards, in person or by contractor, it would have been necessary for them to express in the contract the express intention that they would construct such cattle guards, we need not inquire. Nor need we inquire whether, by a simple contract, appellants could so bind themselves. But it is certain that such a simple contract, even if it be not specifically enforceable, is not illegal. In other words, it would have been a lawful discharge of appellants' obligation to construct the cattle guards, had appellants done so. The point is, then, at what point did appellants have it in their power to draw back, and decline to construct the cattle guards?

We will assume that they had it in their power to draw back and decline to perform in person or by contractor so long as the obligation was simply contractual. We will, for present purposes, go further, and concede that appellants could decline to perform up until the judgment became final.— But the district court got its power to enforce its judgment, and to issue all writs necessary to such enforcement, from the constitution and the laws of the State. Ordinarily we may examine the form of the order of the judgment in order to determine what the court intended. But here we know that, at the time the judgment was rendered, all parties intended that appellants should construct the cattle guards, in person, or through a contractor. It was too late, when the judgment became final, for appellants to draw back, and say that the court had no power to require appellants to obey its judgment. If the fact that the judgment was an agreed one is of any lawful concern here, it is only for the purpose of interpreting the judgment, as is pointed out above. The parties certainly must be taken to have intended that they should do what they agreed to do. Namely, that appellants should construct the two cattle guards. So much for the construction of the judgment. The court looks to its legal powers to find the means of the enforcement of its judgment. To deny the court the power to enforce the judgment, as is pointed out by citation of authority above, is to deprive the court of its jurisdiction.

Here appellees made known to the court that appellants had failed and refused to construct, or cause to be constructed, the cattle guards. It was only necessary on appellees' part to give the court such information. The court, by the order herein appealed from, required appellants to perform their obligation, as agreed to in the judgment. The only substantial defense urged by appellants was that their obligations were contractual. Appellants, as I understand it, do not deny that, if their obligation is rooted in the court's judgment, rather than in the contract of the parties, the court is entitled under the law to enforce its judgment by resorting to all its powers.