**ACCURATE ANSWERING SERVICE, INC., Appellant,**

v.

**ANSWERING SERVICE, INC., d/b/a Answering-Louisville, Appellee.**

**ANSWERING SERVICE, INC., d/b/a Answering-Louisville, Appellant,**

v.

**Lorraine M. PURCELL et al., Appellees.**

Court of Appeals of Kentucky.

July 2, 1965.

As Modified on Rehearing Oct. 8, 1965.

Allen Schmitt, Louisville, for Accurate Answering Service, Inc., et al.

Gerald Kirven, O. Grant Bruton, Louisville, Middleton, Seelbach, Wolford, Willis & Cochran, Louisville, of counsel, for Answering Service, Inc., d/b/a Answering-Louisville.

CLAY, Commissioner.

Both parties have appealed from a judgment enforcing an agreement between them. We will consider their contentions following a statement of these somewhat complicated proceedings. Appellant, Accurate Answering Service, Inc., will hereafter be referred to as "Accurate", and appellee, Answering Service, Inc., will be referred to as "Answering".

Answering had conducted a telephone answering business in Louisville for approximately 15 years before this controversy arose. In its employ were Lorraine Purcell and Mary Hughes, with whom Answering had a valid agreement that they would not engage in a competitive undertaking in Louisville for a period of two years after the termination of their employment. In September 1962, Answering's attorney Manny Frockt incorporated Accurate to engage in the same type of business, and the two employees above mentioned resigned from Answering and went to work for Accurate. This was a clear violation of their agreement.

Shortly thereafter Answering filed a suit against Accurate, Frockt, Purcell and Hughes for an injunction and other relief. (A temporary injunction was issued by this Court in March 1964.) On December 3, 1962, before this case was heard on its merits, the parties (excluding Frockt) entered into a compromise settlement agreement fixing their rights, and it was incorporated in an agreed judgment. The agreement referred to a list of Answering's subscribers on file as of December 3, 1962, and its general purpose was to prevent Accurate, Purcell or Hughes from taking these subscribers away from Answering.

On the appeal by Accurate the controversy revolves around two provisions, one in the agreed judgment and one in the agreement. These provided:

1(c) "In the event that the defendants (Accurate, et al.) or any of them obtain *any* subscribers described in the aforesaid agreement from and after this date * * *, then in that event as liquidated damages, defendants shall pay to plaintiff on demand a sum or sums equal to all service charges paid or owed by said subscribers for a period beginning on the date said subscribers gave their business to any of the defendants, directly or indirectly, and ending on the first day of November, 1964."

3(a) "Should any present subscriber approach Second Parties (Accurate, et al.), or any of them, to have Second Parties handle their service, Second Parties shall write a letter to the National Office of the First Party (Answering) telling it that said subscriber desires to leave First Party and further desires to use the services of Second Parties. Second Parties, and any of them, shall have the right to accept said subscriber *only if written consent is given* by First Party to Second Parties. This will apply until November 1, 1964." (Our emphasis.)

For a while the parties operated under the agreement and the agreed judgment with the net result that Accurate was obtaining more and more of Answering's original subscribers. Answering had given its written consent to the acceptance of some of these by Accurate under item 3(a) of the agreement quoted above. The present controversy was precipitated when Answering filed a motion for a rule and other relief on the ground that Accurate and its employees were violating the agreement and agreed judgment in many respects. Countermotions were filed by Accurate. The two judgments appealed from in substance adjudged as follows: (1) The parties were bound by their agreement and the agreed judgment and they were entered into in good faith by both parties; (2) Accurate must pay to Answering all fees collected or owed for services rendered by Accurate to customers whose names appeared as subscribers on Answering's De-

cember 3, 1962, list (with certain exceptions not here involved); (3) Accurate must furnish the court's Master Commissioner the list of all of its customers since the date of incorporation, and the Master Commissioner was directed to assess and collect the proper charges from Accurate. (A subsequent money judgment was entered pursuant to this last order, which is now pending on appeal but has been ordered held in abeyance until the decision on the appeals we are here considering.)

Accurate's three contentions are: (1) It should not be required to account for fees obtained for services rendered to former subscribers of Answering whom Answering by written consent had released to Accurate; (2) Accurate should not be required to account for fees obtained for services rendered to former subscribers of Answering (where no written consent was given) who had terminated their subscriptions with Answering without any solicitation on the part of Accurate; and (3) Answering could not refuse its written consent arbitrarily and without just cause.

■ With respect to the first contention, we think Accurate's position is well taken. Section 3(a) of the agreement provided that Accurate "shall have the right to accept" an old subscriber of Answering when the latter gave its written consent. This provision must be construed as modifying section 1(c) of the agreed judgment which provided that Accurate shall pay as liquidated damages the service charges paid or owed by *any* former subscribers of Answering obtained by Accurate. It would be meaningless otherwise. What else could Answering be consenting to except the loss of fees from an already lost subscriber?

While there is some substance to Answering's complaint that the agreement was designed to prevent Accurate from competing with it insofar as its old subscribers were concerned, the language of the agreement must be interpreted to mean that Answering could (in its absolute discretion, as we are hereafter deciding) voluntarily relinquish its claim to the subscriber, and as a consequence its claim to damages as a result thereof. As we have said, Answering's written consent would be utterly meaningless otherwise, and surely it must serve some purpose in the agreement. Accurate should not have been required to account for these customers.

■ Accurate's second contention, that it could properly accept certain customers (without penalty) without Answering's consent, has no merit. This lawsuit was commenced by Answering to prevent the pirating of its subscribers by Accurate, which was being done through Accurate by Purcell and Hughes in flagrant violation of a pre-existing agreement. It was upon the assurance by those representing Accurate that the latter was going into something other than the pirating business that Answering was induced to forego its clear rights against Purcell and Hughes and its claimed rights against Accurate and Frockt. The tenor of the compromise agreement was to compel Accurate to leave Answering's subscribers alone, and if this was not done, Accurate (and Purcell and Hughes) would pay liquidated damages for exploiting them.

Those subscribers were specified by name and they were "off limits". Not only did Accurate agree (in paragraph 4) not to solicit these subscribers but they agreed *not to give them service.* The agreement must be construed as attempting to avoid as much as possible the question of solicitation of Answering's old subscribers by Accurate (who were actually being solicited indirectly by Accurate's newspaper advertising) and to avoid a controversy over the time of termination of Answering's service to its subscribers and the reasons therefor. The Chancellor properly decided that Accurate must pay as liquidated damages for all of Answering's old subscribers served by Accurate without written consent, regardless of whether they were current subscribers of Answering when Accurate undertook to serve them.

The final contention of Accurate is that Answering could not withhold its written consent unless the latter could retain an account or the former had solicited it. There are no such conditions in the agreement. While Answering may have followed this policy in giving its written consent, it was not required to do so.

As we have heretofore pointed out, the amicable compromise of this controversy was based on the supposition that Accurate was not going to build its business on Answering's old subscribers. The agreement was designed to terminate the controversy rather than perpetuate it. If Accurate could question Answering's grounds for withholding consent, not only the parties but the customers would become embroiled in endless questions of intent, motive and solicitation.

Answering is entitled to some benefits from this agreement. At least Purcell and Hughes were the offending parties in this whole controversy and Answering gave up valuable rights (which might well have resulted in the complete extinguishment of Accurate) in return for Accurate's agreement to leave Answering's subscribers alone. We think Answering was overly fair in giving its consent in any case (and we have in this opinion held them strictly to the detriment arising from this consent) but we find nothing in the agreement or the circumstances which would compel them to give it. In our opinion Answering had an absolute discretion with respect to this matter and Accurate must respond in damages for fees collected from, or owed by, or properly chargeable to those customers (who were Answering's former subscribers) served by Accurate without the written consent of Answering.

We now reach the appeal of Answering and its contention that the Chancellor, pursuant to its motion, should have set aside certain parts of the agreed judgment, thereby permitting it to prosecute its claims for damages against Accurate, Purcell, Hughes and Frockt on its original cause of action. Answering wishes to retain the benefits accruing to it under the agreed judgment.

There are several reasons why the trial court correctly adjudicated this issue. In the first place, we cannot say the Chancellor was clearly erroneous in finding that Accurate, et al., were not guilty of bad faith or fraud *when entering into* the agreement or acceding to the agreed judgment. The fact that the latter subsequently breached the agreement and violated the agreed judgment is not in itself grounds for setting it aside.

Secondly, it would hardly be equitable to permit Answering to enforce the agreed judgment to the extent it was beneficial and at the same time deprive Accurate, et al., of their rights thereunder.

Finally, Answering's original claims were extinguished by the agreement and the agreed judgment, and we know of no ground upon which they could be revived.

We do not pass upon the rights of the parties under another judgment now pending on appeal in this Court, or whatever other rights, if any, the parties may have under the agreement and the agreed judgment which were not determined in this opinion.

On the appeal of Accurate Answering Service, Inc., the judgment is affirmed in part and reversed in part with directions to modify the judgment consistent with this opinion; on the appeal of Answering Service, Inc., the judgment is affirmed; all costs of both appeals shall be paid by Accurate Answering Service, Inc.