HANOVER LOGANSPORT, INC. and Spatz & Company, Appellant (Defendants Below),

v.

ROBERT C. ANDERSON, INC., Appellee (Plaintiff Below),

James Dettling, d/b/a Discount Liquors, Applicant for Intervention.

No. 71A03–8607–CV–00179.

Court of Appeals of Indiana, Third District.

Sept. 10, 1987.

---

Robert J. Palmer, E. Spencer Walton, Jr., May, Oberfell & Lorber, South Bend, for appellant.

David A. Rosenthal, Rosenthal, Greives & O'Bryan, Lafayette, for appellee.

STATON, Judge.

Hanover (defendant below) appeals the trial court's denial of its motion to dismiss.

We reverse.

Hanover is the owner of certain business premises located in a K–Mart Shopping Center in South Bend. Anderson is a corporation which sought to operate a liquor store in that location. On February 23, 1984, Hanover and Anderson entered into a nine-year, eleven-month lease to begin on May 1, 1984. Hanover agreed to remove tenant Discount Liquors before that date. On July 18, 1984, Discount Liquors still occupied the space. Thus, Anderson filed the following complaint:

#### COMPLAINT FOR BREACH OF CONTRACT AND LEASE

Comes now Robert C. Anderson, Inc., by counsel, and for its complaint against Defendants hereby states:

1. That Plaintiff is a corporation, its principal place of business is located in St. Joseph County, Indiana.
2. Defendant Hanover Logansport, Inc. is the owner of real property located in St. Joseph County, Indiana, commonly known as the K–Mart Shopping Center, South Bend, Indiana and Spatz and Company is the leasing agent of the property for the owner.
3. That on February 23, 1984 the Defendant entered into a lease through its agent Spatz and Company, with Plaintiff, a copy of the lease is attached hereto as Exhibit "A".
4. That the lease was for a period of nine years, eleven months, commencing May 1, 1984 for the space at the K–Mart Plaza, South Bend, Indiana now occupied by Discount Liquors, the address being 1222 Western Avenue.
5. That Defendants agreed to remove the present tenant, Discount Liquors, a

retail liquor, beer and wine vendor, from the leased space prior to May 1, 1984; but has refused to remove said tenant and instead has renewed the lease with said tenant.

6. That Plaintiff informed Defendants that prior to transfer of a liquor license it presently held, the present tenant, Discount Liquors, had to be evicted or removed from the premises before the local alcoholic beverage commission would approve said transfer and if such license was denied for the above reason, Plaintiff was foreclosed from applying for a transfer of license to that location for one year.

7. That Defendants refused and continues to refuse to remove said tenant from the premises so that Plaintiff could proceed to apply for and receive approval of the local Alcoholic Beverage Commission for the transfer of its liquor license.

8. That Defendants have breached the terms of the lease by failing to provide occupancy to Plaintiff as required by the lease attached hereto.

9. That Plaintiff desires to enforce the terms of said lease and to obtain occupancy as soon as possible or in the alternative is entitled to loss of profits for the term of the lease in the amount of Five Hundred Thousand Dollars ($500,000.00).

10. That Plaintiff relied on the Defendants representations and contract and agreement as set forth in the lease and Plaintiff relinquished rights to occupy another store in a similar location, and the right to reoccupy said store has been lost by the Plaintiff.

WHEREFORE, Plaintiff hereby prays for judgment against defendant in the amount of Five Hundred Thousand Dollars ($500,000.00) of lost profit or in the alternative an order of the Court granting occupancy pursuant to the lease of February 23, 1984 for the Plaintiff.

Record at pgs. 2–3.

Before trial, on February 7, 1985, Hanover tendered in writing an offer of real estate to Anderson. It stated:

### OFFER OF REAL ESTATE TO PLAINTIFFS

COMES NOW the defendant Hanover Logansport, Inc. and Spatz & Company, by counsel, and pursuant to Trial Rule 68 of the Indiana Rules of Procedure hereby tenders to the plaintiff Robert C. Anderson, Inc. the premises leased to Plaintiff Robert C. Anderson, Inc. on February 23, 1984, pursuant to the terms and conditions of said lease attached to the plaintiff's complaint as Exhibit "A."

Record at p. 134.

Anderson accepted in writing the offer of real estate on February 18, 1985. The acceptance stated:

### CONDITIONAL ACCEPTANCE OF OFFER OF REAL ESTATE

COMES NOW the Plaintiff, ROBERT C. ANDERSON, INC., and pursuant to T.R. 68 hereby accepts the offer of real estate to Plaintiff, subject to the conditions set forth in said lease being that Plaintiff shall first obtain the approval of the Indiana Alcohol Beverage Commission to transfer a liquor license to the leased premises and approval of the location of the leased premises for operation of a packaged liquor store.

THEREFORE, Plaintiff accepts the offer of real estate on conditions set forth above which conditions shall remain in effect for a period of ninety (90) days after HANOVER LOGANSPORT, INC. and SPATZ & COMPANY present to the Court and to the Plaintiff evidence that the real estate subject to this offer is not encumbered by any existing leasehold interest.

FURTHER, the offer is only accepted for purposes of mitigation of damages and not in settlement of damages arising to Plaintiff caused by Defendants' breach of contract.

Record at pgs. 154–55.

On March 29, 1985, Hanover filed a request for the clerk of the St. Joseph Superior Court to enter judgment "in accordance with the acceptance by plaintiff of defend-

ants' offer of real estate attached hereto as Exhibit "A" previously received on February 20, 1985." (Record at pgs. 152–53.) And, finally, on April 11, 1985, both parties filed an agreed entry stating that "the judgment as stipulated to by the Defendants herein should be recorded of record in the judgment record book of the County of St. Joseph." (Record at p. 158.)[1] Anderson took possession of the premises within one week of July 1, 1985.[2] On September 12, 1985, Hanover filed a motion to dismiss; it was denied by the trial court.

■ It is well settled that a complaint may not be dismissed for failure to state a claim upon which relief may be granted[3] unless it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief. *Paul v. Metropolitan School District of Lawrence Township* (1983), Ind.App., 455 N.E.2d 411, 412. In ruling on a motion to dismiss for failure to state a claim, the lower court is required to view the complaint in a light most favorable to the non-moving party and with every intendment in his favor. *Id.* The court may only look to the complaint, and well-pleaded material must be taken as admitted. *Id.* The basic purpose of a T.R. 12(B)(6) motion to dismiss is to test the legal sufficiency of the complaint to state a redressable claim. Thus, the motion is properly utilized to test the legal sufficiency of the complaint; or stated differently, to test the law of the claim, not the facts that support it. *Id.*

Hanover makes the following argument:

1. The complaint seeks specific performance of the lease or *in the alternative* money damages for loss of profits *over the term of the lease.*
2. Hanover made an offer of real estate pursuant to T.R. 68 consistent with one of the alternatives—specific performance—in the complaint.
3. Anderson accepted the offer.
4. Under T.R. 68, the clerk is required to enter judgment.
5. Anderson took possession of the real estate.
6. By accepting the offer of real estate and taking possession of the premises, Anderson chose its remedy and is now barred by law from continuing the litigation.

Anderson argues that (1) an offer of judgment under T.R. 68 may be in part or in whole; and (2) both Hanover and the trial court were on notice that the offer of judgment did not address and dispose of the whole of its claim. Anderson points to that portion of its acceptance which states: "... Further, the offer is only accepted for purposes of mitigation of damages and not in settlement of damages arising to Plaintiff caused by Defendants' breach of contract." In its brief, Anderson states: "The acceptance of said offer specifically states that the lease between the parties would be

---

1. It is undisputed that Hanover served its offer at a time more than ten (10) days before trial and that Anderson served written notice that the offer was accepted within ten (10) days after the service of the offer.

    Further, both the offer and the notice of acceptance "together with proof of service thereof" were filed with the trial court clerk.

    Ind. Rules of Procedure, Trial Rule 68, states, in part:

    At any time more than ten [10] days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within ten [10] days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and

thereupon the clerk *shall* enter judgment.... (Emphasis added.)

Yet, the record does not show that a judgment was ever entered. Because a judgment should have been entered and because our disposition of the case includes an instruction to the trial court to enter such judgment, we will proceed in our discussion as if the judgment indeed had been entered.

2. It appears that Anderson then sought to recover, in addition to specific performance of the contract, lost profits for delay in tendering the real estate—the lease was supposed to go into effect on May 1, 1984, but Anderson did not get possession until around July 1, 1985—not "loss of profits for the term of the lease in the amount of Five Hundred Thousand Dollars ..." as stated in the complaint.

3. *See* Ind. Rules of Procedure, Trial Rule 12(B)(6).

as contracted, subject to the conditions in the lease, but that the Plaintiff did not waive damages for breach of contract which arose due to the failure of Defendant to honor its contract *between the date the offer was signed and the date the Court entered an Order approving the settlment [sic] as to possession."* (Emphasis added.)[4]

Thus, we address the following issue: Whether, by law, a plaintiff, who accepts an offer of judgment which conforms to one of the alternative prayers for relief contained in his complaint, may then seek additional damages arising from the same cause of action.

**4.** However, Hanover is under the impression that Anderson wants to recover for loss of profits over the entire term of the lease. (Appellant's Brief, pg. 17.)

In this opinion, we will address whether, by law, a plaintiff, who accepts an offer of judgment which conforms to one of the alternative prayers for relief contained in his complaint, may then seek additional damages arising from the same cause of action. Although this is not the precise issue raised by Hanover, we will raise and address it *sua sponte* to avoid protracted litigation and the cost of another appeal.

**5.** T.R. 68 closely follows the language of Federal Rule 68.

**6.** Federal cases that hold or imply that a consent judgment possesses the same force with regard to *res judicata* and collateral estoppel as a judgment entered after a trial on the merits include: *United States v. Swift & Co.* (1932), 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999; *Burgess v. Seligman* (1882), 107 U.S. (17 Otto) 20, 27 L.Ed. 359; *Interdynamics, Inc. v. Firma Wolf* (3rd Cir. 1981), 653 F.2d 93, *cert. denied,* 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631.

Federal cases which hold or imply that in entering a consent judgment, a court is merely exercising an administrative function by recording what has been agreed to between the parties and, therefore, has no preclusive effect include: *United States v. International Bldg. Co.* (1953), 345 U.S. 502, 73 S.Ct. 807, 97 L.Ed. 1182; *Fruehauf Trailer Co. v. Gilmore* (10th Cir.1948), 167 F.2d 324; *Lawlor v. National Screen Serv. Corp.* (3rd Cir.1954), 211 F.2d 934, *Rev'd,* 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955) (The Supreme Court expressly stated, however, that it was "in accord with the decision below" on this point. 349 U.S. at 327, 75 S.Ct. at 868).

State courts are also divided on this question. *Compare Accurate Answering Service, Inc. v. Answering Service, Inc.* (1965), Ky.App., 394 S.W.2d 765 (An action is terminated by an entry of an offer of judgment and the court has no

There are no Indiana cases that address whether an entry of judgment under T.R. 68 can be a partial judgment. In the absence of State law, the Court looks to federal decisions for guidance in interpreting our rules of procedure which are similar to the Federal Rules of Civil Procedure.[5] *Jackson v. Russell* (1986), Ind.App., 491 N.E.2d 1017, 1018. However, the federal courts are split as to whether a consent judgment operates as a bar to subsequent litigation.[6]

Therefore, we will look to the rationale behind these decisions and T.R. 68 itself to determine our disposition of the case.[7]

power to permit the plaintiff to enter judgment on the offer and to continue the action for the recovery of the balance of the claim) *with Empire Oil & Ref. Co. v. Chapman* (1938), 182 Okla. 639, 79 P.2d 608 (Second part of plaintiff's claim not merged in a former consent judgment on the first part—"If [the parties] did not have that intention, and neither led the other to believe it was full settlement of all damages, why should the law impose it on them?" *Id.,* 79 P.2d at 610.).

**7.** In Indiana, there are four cases which address the effect of a consent judgment. They are: *Lemmon v. Osborn* (1899), 153 Ind. 172, 54 N.E. 1058; *McNelis v. Wheeler* (1947), 225 Ind. 148, 73 N.E.2d 339; *State v. Huebner* (1952), 230 Ind. 461, 104 N.E.2d 385, *reh. denied;* and *Elder v. State Ex Rel. Dep't of Natural Resources* (1985), Ind.App., 482 N.E.2d 1383.

In *Lemmon,* the Court held that where a judgment is entered by agreement, the rights of the parties are as conclusively adjudicated as if the judgment had been rendered upon a trial of the cause. *Id.,* 54 N.E. at 1060. In that case, a prior judgment by agreement established the validity of certain mechanics' liens. In a subsequent suit, the plaintiff sought to have the liens declared invalid.

In *McNelis,* the Court held that a consent judgment is as binding and conclusive between the parties and their privies as if the suit had been an adversary one. *Id.,* 73 N.E.2d at 342. And, in defining a *final* judgment, the Court stated: "If the judgment settles and concludes the rights involved, and denies the parties means of further prosecuting or defending the action, it is final." *Id.,* 73 N.E. at 341. It then noted that this rule has also been stated as follows: "An adjudication once had between the parties bars and cuts off all future litigation, not only as to what was actually litigated and determined, but as to all matters that might have been litigated and determined in the action." *Id.* In *McNelis,* the defendant sought to attack the validity of a prior judgment by agreement.

A consent judgment has a dual aspect. It represents an agreement between the parties settling the underlying dispute and providing for the entry of judgment in a pending or contemplated action. See James, *Consent Judgments as Collateral Estoppel*, 108 U.Pa.L.Rev. 173, 175 (1959). It also represents the entry of such a judgment by a court—with all that this means in the way of committing the force of society to implement the judgment of its courts. *Id.*

As a result of this dual aspect, some courts and commentators focus on the contractual aspect of a consent judgment, thus determining whatever its preclusive effect may be by ascertaining the intent of the parties—in the same way courts construe other agreements. *See, e.g., U.S. v. ITT Continental Baking Co.* (1975), 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148 (Consent decree to be construed basically as a contract, relying upon certain aids to construction as with any other contract); *Donald F. Duncan, Inc. v. Royal Tops Mfg. Co., Inc.* (7th Cir.1965), 343 F.2d 655 (Consent judgment gets its binding force and effect from parties' consent and is in nature of a contract).

Yet, other courts and commentators focus on the entry of a consent judgment by a court and argue that such a judgment possesses the same force with regard to *res judicata* and collateral estoppel as a judgment entered after a trial on the merits. *See, e.g., Interdynamics, supra* (A consent decree, although negotiated by the parties, is a judicial act); *Swift, supra,* (We reject the argument that a decree entered upon consent is to be treated as a contract and not as a judicial act). *See also Warnasch v. Wagner* (1956), Tex.Civ.App., 291 S.W.2d 389 ("If an agreed judgment has no greater dignity than a simple written contract why take the trouble to get a court to solemnly adopt such an agreement as its judgment?" *Id.* at 393) (Justice Cody, dissenting).

Proponents of the consent-judgment-as-contract theory argue that if consent judgments are given preclusive effect regardless of the intent of the parties, such a rule would lessen the chance of compromise between them. This, they argue, is true for two reasons. First, in many cases, the application of such a rule (at least in regard to the collateral estoppel aspect of that rule) would be unforeseeable—it would reach into all possible future disputes among the parties, no matter how hard it may be to predict them at the outset of the first litigation. Second, if all issues and claims must be negotiated and dealt with in a consent judgment or foregone forever, parties will be reluctant to enter into such an agreement for fear that they will "miss" something.

But, proponents of the consent-judgment-as-final judgment theory counter that the preclusive effect of a consent judgment serves several objectives. Among them, economy is achieved in the use of judicial resources, the harassment of parties avoided, and the possibility of inconsistent results is eliminated. Note, *The Consent Judgment as an Instrument of Compromise and Settlement,* 72 Harv.L.Rev. 1314, 1320 (1959).[8]

---

In *Elder,* the Court stated that, once sanctioned by the court, a consent decree is an adjudication which has *res judicata* effect. *Id.* at 1389. Consequently, it is an unappealable final judgment. *Id.* There, the Court held that the consent decree in question was entitled to *res judicata* effect precluding relitigation of the same claim or cause of action; "as such, [it] fixed the rights and duties of the parties." *Id.* at 1390. In *Elder,* the plaintiffs sought to vacate a prior consent decree.

In *Huebner,* the Court held that a consent decree cannot be reviewed by appeal, *Id.,* 104 N.E.2d at 387, since it does not represent the judgment of the court. *Id.,* 104 N.E.2d at 388. Appellate courts do not have the authority to determine whether or not the parties erred in making their agreement or giving their consent thereto. *Id.*

Admittedly, *Elder* refers to a consent judgment as a final judgment and *McNelis* states that a final judgment bars all future litigation, including all matters that might have been litigated in the prior action. But, in all of these cases, one of the parties was attempting to re-open the entire case and attack the validity of the prior consent judgment or decree. Here, Anderson does not attack the validity of its agreement with Hanover; Anderson seeks only to recover the balance of its claim.

**8.** The author of this article, while arguing that consent judgments should be given preclusive

T.R. 68 itself strongly implies that a plaintiff may reserve an issue or claim outside a judgment; indeed, a portion of the rule provides as follows:

"... When liability of one party to another has been partially determined by verdict or order of judgment, but the amount or extent of liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than ten [10] days prior to the commencement of hearings to determine the amount or extent of liability."

The rule states that once a judge or jury has determined that a defendant is liable (for example, in a bifurcated trial where liability and damages are tried separately), the amount of damages that defendant will pay may be negotiated by the parties and provided for in an offer and acceptance of judgment. Thus, it would seem to follow that the rule also covers the opposite situation—where an offer of judgment by the defendant admits liability, the plaintiff accepts that offer of judgment, and the judgment is entered by the clerk. The case would then proceed to trial for a determination of the amount of damages owed by the defendant.

We note that T.R. 68 is intended to encourage settlements, discourage vexatious suits, and avoid protracted litigation. *See* 12 Wright & Miller, *Federal Practice and Procedure*, § 3001. Therefore, the result we reach here should serve those purposes.

Because we agree that if all issues and claims must be negotiated and dealt with in a consent judgment or foregone forever, parties will be reluctant to enter into such agreements, we adopt the consent-judgment-as-contract theory and hold that the preclusive effect of a consent judgment must be measured by the intent of the parties. However, it must be clear that *both* parties have agreed to reserve an issue or claim. *And,* it must be precisely stated what issues or claims are being reserved.

Here, Anderson stated in its acceptance of the offer of real estate: "... [T]he offer is only accepted for purposes of mitigation of damages and not in settlement of damages arising to Plaintiff caused by Defendants' breach of contract."

First, it is not clear what claim for damages Anderson was attempting to reserve using this language. Anderson's Complaint does not tell us either. There, he sought specific performance or money damages for loss of profits over the term of the lease. In fact, the first time Anderson clearly states its intentions is in the Appellee's Brief—it is seeking money damages for loss of profits for delay in tendering the real estate.

Second, Hanover apparently never intended for this claim to be reserved. Indeed, Hanover's Brief assumes Anderson is now seeking the other alternative in the Complaint—money damages for loss of profits over the term of the lease.

Therefore, in order to insure that both parties have agreed to reserve a claim or issue [9] and that the reserved claim or issue is clearly apparent to both parties, we hold that (1) the reservation must be incorporated into the offer of judgment itself and (2) it must be an inherent part of the original complaint. Thus, for example, before a party may reserve an additional cause of action in a consent judgment, that cause of action must have been originally set out on the face of the complaint. Because Anderson did not include a claim for damages for delay in tendering the real

effect, notes: "In construing the scope of contractual compromises, courts have often concluded that parties intended to cover all claims arising out of the same transaction if there were no limitations expressed in the agreement and no grounds existed for modifying it to conform to the agreement of the parties. (Footnote omitted.) A similar assumption would seem appropriate in the case of a consent judgment." *Id.* at 1319.

9. Here, we are dealing with the reservation of a claim for damages. However, there may be cases where a party desires to reserve an issue or another cause of action. The same rule would apply in those situations.

estate in its Complaint, it is precluded from reserving such a claim in the consent judgment.[10]

This rule will not discourage parties from reaching an agreement since certain issues and claims may be reserved for trial; in fact, it will most likely encourage settlements since parties who enter into consent judgments will know precisely where they stand in relation to each other.

Too, this rule will avoid protracted litigation, since it requires plaintiffs to reserve a claim or issue both in the complaint and in the consent judgment. If we were to require such a reservation only in the consent judgment (as Anderson asks us to do here), the potential for protracted litigation would be too great. For example, in a situation where A and B have entered a consent judgment and B thinks the controversy has ended, such a rule would allow A: (1) to argue that it had no intention of ending the controversy and (2) to proceed on the alleged balance of its claim. This could potentially allow the litigation to continue on and on through the years.

But, under the rule we have set forth here, A would not be allowed to make such a claim unless it was shown that a reservation was made in A's complaint and in the consent judgment. In this way, courts can be assured it was also B's intention to continue the litigation.

Therefore, we reverse and remand to the trial court, with instructions to enter a judgment on the offer of judgment and to grant Hanover's motion to dismiss.

Reversed and remanded.

ROBERTSON, J., concurs.

HOFFMAN, J., concurs with opinion.

HOFFMAN, Judge, concurring.

I concur on the basis of *General Discount Corp. v. Weiss Machinery* (1982), Ind.App., 437 N.E.2d 145, 151.

10. Indiana Rules of Procedure, Trial Rule 12(B) states, in part:

"... When a motion to dismiss is sustained for failure to state a claim under subdivision (B)(6) of this rule the pleading may be amended once as of right pursuant to Rule 15(A) within ten [10] days after service of notice of the court's order sustaining the motion and thereafter with permission of the court pursuant to such rule...."

However, Anderson may not take advantage of this rule by amending the complaint, then arguing it has met the requirements set out by this opinion. Obviously, the claim or issue must be in the complaint at the time the parties reach an agreement and enter a consent judgment.