STATE BOARD OF TAX COMMIS-
SIONERS, Appellant (Defendant
Below),

v.

Harry SMITH, et al., Appellees
(Plaintiffs Below).

No. 4–1182A348.

Court of Appeals of Indiana,
Fourth District.

May 15, 1984.

Rehearing Denied June 20, 1984.

Linley E. Pearson, Atty. Gen. of Indiana, James R. Green, Deputy Atty. Gen., Indianapolis, for appellant.

Michael L. Rogers, Rogers & Dove, North Vernon, for appellees.

YOUNG, Judge.

Plaintiffs-appellees, Harry Smith, et al. (Taxpayers) challenged the validity of an equalization order issued by defendants-appellants, State Board of Tax Commissioners (Board). This equalization order, if effective, would restore assessed real estate values to the amounts as originally assessed by the township trustees of Jennings County. Thus, the Board's order would nullify the trustees' unanimous decision to reduce said assessments by 30%, allowing a 15% reduction factor for location and a 15% reduction factor for local economic conditions. The trustees' decision was apparently arrived at after conversation among the various trustees and with the County Assessor, the County Commissioners, the soil conservation service and also real estate brokers and loan company agents.

In determining whether the values of the property, as assessed by the trustees, should be modified, the Board held an equalization hearing in Jennings County on November 10, 1981 for the purpose of gathering information. Upon review of the county abstract of assessments submitted on June 21, 1981 and acting upon the recommendation of the hearing officer present at the November 10th hearing, the Board issued an equalization order on December 2, 1981 directing that the assessments be increased by a 42% multiplier. This multiplier would in effect restore the assessed values to the same level as before the trustees' application of the 30% reduction factor.

On December 14, 1981 the Taxpayers filed a petition to review the Board's equalization order, and a hearing upon that issue was held on January 26, 1982. The Board entered its finding on February 12, 1982 reaffirming its order of December 2, 1981..

The Taxpayers filed their complaint for judicial review in the Jennings Circuit Court on February 24, 1982 alleging that the Board's decision to use the 42% multiplier was arbitrary, capricious and unlawful. On motion by the Board, the matter was thereafter venued to Jackson Circuit Court. The Jackson Circuit Court reviewed the equalization order, stated its findings, and entered judgment for the Taxpayers. This appeal followed.

The several issues posed by the Board have been rephrased as follows for the sake of clarity: [1]

1) whether the trial court applied the incorrect standard of review in finding that the Board's equalization order of December 2, 1981 was arbitrary, capricious, and unlawful;

2) whether the trial court erred by relying on the judgment rendered in a prior lawsuit; and

3) whether the trial court erred in finding that the Board's equalization order violated the statutory notice requirements of Ind.Code 6–1.1–14–1, *et seq.*

### I.

The Board assigns as error various findings of fact and conclusions of law rendered by the trial court. In essence, the Board argues that the trial court arrived at these findings by examining the Board's decision on the merits and thus failed to accord any weight to the Board's own previous findings. We agree. The proper standard to be applied by a trial court in reviewing an administrative agency's decision is "... whether the agency possessed jurisdiction over the subject matter, and whether the agency's decision was made pursuant to proper procedures, was based upon substantial evidence, was not arbitrary or capricious, and was not in violation of any constitutional, statutory or legal

1. The Board alleges that Taxpayers' counsel tampered with the record. We do not condone any tampering or alterations of official records. However, after careful review we have found that the "defacing" consists of interlineations, which although improper, do not constitute an alteration of the record such as would warrant the imposition of sanctions.

principle." [2] *State Board of Tax Comm'rs v. South Shore Marina,* (1981) Ind.App., 422 N.E.2d 723, 727. *See State Board of Tax Comm'rs v. Gatling Gun Club, Inc.,* (1981) Ind.App., 420 N.E.2d 1324; *Stokely Van Camp, Inc. v. State Board of Tax Comm'rs,* (1979) Ind.App., 394 N.E.2d 209; *State Board of Tax Comm'rs v. Holthouse Realty Corp.,* (1976) 170 Ind.App. 232, 352 N.E.2d 535; *State Board of Tax Comm'rs v. Pappas,* (1973) 158 Ind.App. 327, 302 N.E.2d 858.

In ensuring its equalization order, the Board was acting pursuant to Ind.Code 6–1.1–15–1 to –4, and thus its decision was entirely within its jurisdictional limits. It was incumbent upon the trial court to review the evidence before the Board and determine whether there was substantial evidence to support the equalization order. The Board's equalization order could be set aside only when a review of the entire record "clearly indicates that the agency's decision lacks a reasonably sound basis of evidentiary support." *City of Evansville v. Southern Indiana Gas & Electric Co.,* (1975) 167 Ind.App. 472, 485, 339 N.E.2d 562, 572.

The record discloses that at the meeting of December 2, 1981, the Board had before it all the evidence relevant to the assessment for the tax year 1981 payable in 1982 including the transcript of the hearing held on November 10, 1981 and the results of the Board's own survey. Based on this evidence, the Board found that the trustees' reduction produced unequal assessments of property within Jennings County and as compared to assessments of similar property in adjoining counties and that equalization was therefore proper under Ind.Code 6–1.1–14–5(a)(2).

The trial court found, however, that the Board's decision to equalize these assessments was not supported by any substantial evidence and was in fact arbitrary, capricious and unlawful. In doing so, the court apparently presumed that the trustees' decision to lower assessments by 30% was accurate until and unless the Board proved otherwise.[3] The Taxpayers argue that, as plaintiffs, they had no duty to question the validity of the Board's survey and that their failure to do so does not constitute reversible error. In fact, the burden in this instance rested squarely with the Taxpayers who, in seeking to upset the equalization order, were required to prove that the order was unsupported by substantial evidence.

■ The Taxpayers by their own admission did not attempt to discredit the Board's evidence, witnesses or findings and thus failed to affirmatively prove that the Board's decision was not founded on substantial evidence and therefore arbitrary and capricious. *State Board of Tax Comm'rs v. Traylor,* (1967) 141 Ind.App. 324, 228 N.E.2d 46. A review of the record indicates that the Board conducted a hearing on November 10, 1981 at which time it solicited evidence which would support the reduction of assessments by the trustees. Counsel for the Taxpayers was present at that hearing and testified on behalf of several Jennings County taxpayers. While the testimony mentioned the adverse economic conditions in Jennings County as compared to surrounding counties, no evidence was introduced to support the trustees' decision to reduce the real estate assessments alone. Under these circumstances, the Board was entitled to give greater weight to its own survey than to the Taxpayers' testimony, and we cannot say that the

---

2. The Administrative Adjudication Act (APA) does not extend to the Board but the above standard of review is closely analogous to that provided under the APA and has been consistently applied to decisions of the Board of Tax Commissioners. Ind.Code 4–22–1–2; *State Board of Tax Comm'rs v. South Shore Marina, supra; Stokely-Van Camp, Inc. v. State Board of Tax Comm'rs, supra.*

3. The trial court's findings on this issue were apparently based upon similar language extracted from the judgment rendered in a Jennings Circuit Court case captioned *Patricia Johnson, et al. v. State Board of Tax Comm'rs,* cause number 80–C–116. The trial court's reliance on this previous judgment is addressed in part II of this opinion.

Board acted arbitrarily and capriciously in disregard of uncontradicted evidence. The legislature has vested the Board with discretionary fact-finding powers, and its findings are entitled to particular weight at the trial court unless clearly shown to be erroneous. *Department of Financial Institutions v. State Bank of Lizton,* (1969) 253 Ind. 172, 252 N.E.2d 248; *Metropolitan School District of Martinsville v. Mason,* (1983) Ind.App., 451 N.E.2d 349; *State Board of Tax Comm'rs v. South Shore Marina, supra; State Board of Tax Comm'rs v. Philco-Ford Corp.,* (1976) Ind. App., 356 N.E.2d 1379.

## II.

◼ Both the Board and the Taxpayers have argued extensively on the application to the facts of this case of the judgment of the Jennings Circuit Court in *Johnson v. State Board of Tax Comm'rs,* Cause Number 80–C–116. In its findings of fact and conclusions of law, the Jackson Circuit Court cited repeatedly to the issues decided in that prior lawsuit. Initially, we note that unappealed decisions of a trial court are not *stare decisis* and thus can bind only those who are parties to the decision itself. *Skrundz v. Review Board of the Ind. Empl. Security Division,* (1983) Ind.App., 444 N.E.2d 1217, 1222; *Hagood v. State,* (1979) Ind.App., 395 N.E.2d 315. This is particularly true when the parties to an action enter into a consent decree subsequent to judgment. The consent decree does not nullify the court's judgment, but it does become the law of the case and as such fixes the rights and duties of the respective parties in a particular case. *State v. Huebner,* (1952) 230 Ind. 461, 104 N.E.2d 385; *cf. General Discount Corp. v. Weiss Machinery Corp.,* (1982) Ind.App., 437 N.E.2d 145.

◼ Taxpayers argue, however, that the *Johnson* decision was binding on the court

here under the doctrine of *res judicata.* For the doctrine to be applicable, it is essential that there have been a final adjudication upon substantially the same issues and involving the same parties.

◼ Taxpayers here advance a novel argument in support of their contention that certain issues decided in the *Johnson* litigation are binding in the present dispute. We find no merit in Taxpayers' assertion that admittedly different plaintiffs in separate litigation can nevertheless be "the same" for purposes of the doctrine of *res judicata.* We fail to perceive the distinction between "same" and "identical". *In re Terry,* (1979) 271 Ind. 499, 394 N.E.2d 94, *cert. denied,* (1980) 444 U.S. 1077, 100 S.Ct. 1025, 62 L.Ed.2d 759. It is submitted that both *Johnson* and the present action were initiated as class actions by and on behalf of all property owners and taxpayers of Jennings County and against the Board. We found nothing in the record to indicate that either of these cases was ever ordered to proceed as a class action pursuant to Ind.Rules of Procedure, Trial Rule 23. Thus, the *only* parties bound by the *Johnson* judgment and the subsequent consent decree were those specifically named in that action. The doctrine of *res judicata* requires that *both* parties be the same. Such was not the case here even though the named defendant in both instances was the Board. *In re Terry, supra, White v. Davis,* (1981) Ind.App., 428 N.E.2d 803.

Taxpayers also assert that the trial court properly relied upon the prior judgment of the Jennings Circuit Court because the issues litigated in both cases are substantively the same. This assertion is erroneous for several reasons. First, the equalization orders in these judgments concerned separate tax years. Further, *Johnson* concerned an equalization hearing attempted by the Board after the statutory deadline had expired.[4] Such is not the case here.

---

4. Ind.Code 6–1.1–14–5 provides in pertinent part:
    (a) After the hearings referred to in section 4[6–1.1–14–4] of this chapter are held, the state board of tax commissioners may, in or-

der to equalize assessed values in any county or in the state as a whole, issue an order increasing or decreasing assessed values of any tangible property if the board finds:

The county abstracts of assessments for tax year 1981 payable in 1982 were submitted to the Board on July 17, 1981 and received by the Board on July 20, 1981. The Board issued its equalization order on this assessment on December 2, 1981. This order was thereafter properly certified on December 7, 1981, clearly within the prescribed time limits. The Jackson Circuit Court's finding that the abstract of assessments for Jennings County was submitted to the Board on March 30, 1980 is clearly erroneous.

Similarly, the court in the earlier case found that the assessed values as prepared by Jennings County trustees were "presumed accurate" due to the Board's failure to follow statutory procedures. In the instant case, the Jackson Circuit Court likewise found that the trustees' findings were to be presumed accurate and subsequently found that the Board's order was unlawful for failure to follow statutory notice procedure.

■ Whether the trustees' findings can be presumed accurate without a finding of procedural irregularity on the part of the Board is an issue already addressed by the legislature. Ind.Code 6–1.1–14–4 has placed the power of review over assessments conducted by the various counties within the purview of the Board's authori-

> (1) That the assessed values in any county are not uniform and equal as to townships, portions of the same township, or classes of property; or
> (2) That the assessed values in this state are not uniform and equal either as between counties or as to classes of property.
> (b) The state board of tax commissioners may not issue an equalization order to increase or decrease assessed values under this section after February 15th or the year following the year in which the county abstracts referred to in section 1[6–1.1–14–1] of this chapter are filed with the board.

Effective June 1, 1983, subsection (b) of Ind. Code 6–1.1–14–5 was amended to read as follows:

> (b) The state board of tax commissioners may not issue an equalization order to increase or decrease assessed values under this section more than six months after the county abstracts referred to in section 1[6–1.1–14–1] of this chapter are filed with the board.

ty. The statute makes no mention of a presumption that the trustee assessments are accurate, but instead directs the Board to consider the modification of the county assessments whenever "the Board determines that the assessment of a county appears to be improper".[5] The matter of review of Jennings County assessments was properly within the discretionary fact finding authority of the Board.

### III.

■ The court also held that the equalization order was unlawful and void due to the Board's failure to follow statutory notice procedure. Taxpayers allege two areas of procedural irregularity. The first refers to the manner of notice given to apprise the Taxpayers in Jennings County that the Board was considering an increase in the assessments. The court found that the notice of hearing was *last* published only five days from the date of the hearing in contravention of Ind.Code 6–1.1–14–9(c)(2) which states that "the published or posted notice of a hearing shall be given at least ten (10) days before the time fixed for the hearing." The Board published the required notices in the North Vernon Plain Dealer on October 29 and on November 5, 1981 and in the North Vernon Sun on October 27, 1981 and November 3, 1981. The Board's publication of notice in October

**5.** Ind.Code 6–1.1–14–4 provides that:

> The state board of tax commissioners shall review the assessments of all tangible property made by the various counties of this state. If the board determines that the assessment of a county appears to be improper, the board shall mail a certified notice to the auditor of the county informing him of the board's determination to consider the modification of that county's assessment. The notice shall state whether the modification to be considered is related to real property, personal property, or both. The notice shall also state a day, at least ten [10] days after the day the notice is mailed, when a hearing on the assessment will be held. In addition to the notice to the county auditor, the board shall give the notice, if any, required under section 9(a) [6–1.1–14–96] of this chapter.

met the statutory notice requirements notwithstanding the fact that the Board published *additional* notices less than ten (10) days prior to the hearing on November 10, 1981. The statute only requires that notice be published *once* in two (2) newspapers of general circulation within the county. Where a statute is clear and unambiguous on its face, unnecessary interpretation is to be avoided. *Blue River Valley School Corp. v. Renfro,* (1983) Ind.App., 446 N.E.2d 1364; *State Board of Tax Comm'rs v. Holthouse Realty, supra.*

The court also found error because the Taxpayers received defective public notice of their right to appeal the Board's equalization order. The Board's order stated that a petition for review was to be filed within ten days from the date of the order, December 2, 1981. Ind.Code 6-1.1-14-7 provides that taxpayers may file a petition for review of an order within ten days after the certification of the order, in this case December 7, 1981. That portion of the statute sets out the right of the Taxpayers and imposes no statutory notice procedure with which the Board was required to comply. The Board was acting pursuant to Ind.Code 6-1.1-14-6 in transmitting copies of the order to the Sheriff of Jennings County for public posting. In any event, Taxpayers filed their petition for review on December 14, 1981, and the petition was received and accepted by the Board on December 16, 1981. The Board substantially complied with the applicable statutory provisions, and the Taxpayers have not shown how a misstatement on the part of the Board was prejudicial to their interests. *State Board of Tax Comm'rs v. Ropp,* (1983) Ind.App., 446 N.E.2d 20.

For the foregoing reasons, the trial court's judgment is reversed.

CONOVER, P.J., and MILLER, J., concur.